A. K. Baugher *et al* for the use of J. Whiting Hyer, *Plaintiffs in Error,* v. Louis Boley, *Defendant in Error.*

1. Section 33 of Article III of the Constitution forbids the legislature to lessen the time within which a civil action may be commenced on an existing ca se of action to recover the possession of land.

2. To acquire title to real estate by adverse possession without color of title, the premises actually occupied must have "been

protected by a substantial enclosure" or have "been usually cultivated or improved" for the full statutory period.

3. While the digging of holes on land and the placing of posts therein on which a wire fence is put may be a trespass, the land is not actually occupied so as to start the running of the statute by which the occupant may acquire a title by adverse possession without color of title until the land is "protected by a substantial enclosure," by the completion of a proper fence, where the land is not "usually cultivated or improved."

4. Great latitude is to be allowed in the reception of indirect, or circumstantial evidence. It includes all evidence of an indirect nature, whether the inferences afforded by it be drawn from prior experience, or be a deduction of reason from the circumstances of the particular case, or of reason aided by experience. The competency of a collateral fact to be used as the basis of legitimate argument, is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry or to assist, though remotely to a determination probably founded in truth.

5. Where evidence that is admitted is merely cumulative and favorable to or not harmful to the complaining party and is not forbidden by law, reversible error cannot be based thereon.

6. Receipts for labor performed in constructing a fence and bearing particular dates may be relevant to the issue as to when the fence was built.

7. When there is evidence that title by adverse possession to land was acquired by a defendant in ejectment under the seven year statute of limitations that became effective August 1st, 1901, by an actual occupancy beginning after the seven year statute was in force and extending for the requisite period, it is not error to refuse to direct a verdict for the plaintiff, or to charge that the possession must have continued for

twenty years as required by the statute when the possession began prior to August 1st, 1901.

8. The requirement of the statute that the land shall be "protected by substantial enclosure" to acquire title by adverse possession without color of title, should be applied with reference to the facts and circumstances of each case as it arises for adjudication.

9. Where lands are wild and uncultivated and they are used for pasturage or for obtaining timber or fuel therefrom, or some such similar use, a substantial enclosure might consist in a wire fence sufficient to indicate a purpose to claim the ownership and use of the land to the exclusion of all others and to protect the land from trespassing vehicles, riders or stock.

10. Although there may be occasional breaks for roads and standing water in a fence enclosing land, yet the fence may be a "substantial enclosure" when it is manifest that there was for the full statutory period a conspicuous effort to maintain a fence around the land commensurate with the attending circumstances for the obvious purpose of exercising rights of ownership of the land and to use the land in a way to which it was suited.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Blount & Blount & Carter,* for Plaintiff in Error;

*E. C. Maxwell,* for Defendant in Error.

WHITFIELD, C. J.—In an action of ejectment the defendant obtained a verdict and judgment and the plaintiffs took writ of error. To a statutory declaration

the plea of not guilty was interposed and trial had thereon.

The plaintiffs proved title by conveyances and the defendant relied on title acquired by adverse possession without color of title for the statutory period. The possession shown was the enclosure of the land by a wire fence consisting of two or three wires on posts and in one place on trees.

Primarily the issues presented were whether the possession and occupation of the land by the defendant began prior or subsequent to August 1st, 1901, and whether the possession and occupation of the land by the defendant was of the character required by the statute to mature a title by adverse possession.

Section 33 of Article III of the Constitution provides that "No statute shall be passed lessening the time within which a civil action may be commenced on any cause of action existing at the time of its passage."

Chapter 4916, Acts of 1901, Section 1722, General Statutes of 1906, enacts as follows: "Where it shall appear that there has been an actual continued occupation for seven years of premises under a claim of title exclusive of any other right, but not founded upon a written instrument or a judgment or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely. For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only: "(1) where it has been protected by a substantial enclosure, or (2) where it has been usually cultivated or improved."

This Statute took effect August 1st, 1901. Prior to

that time, under Chapter 4412, Acts of 1895, the period of possession without color of title required to ripen into title to land by adverse possession was twenty years.

If this cause of action existed prior to August 1st, 1901, i. e. if the defendant was in possession of the land prior to August 1st, 1901, so that an action of ejectment could have been brought against him for the recovery of the possession by the owner, such owner had twenty years from the beginning of such possession within which to bring an action of ejectment before the possession of the defendant would ripen into a title by adverse possession; and under the constitutional provision above quoted, the statute which became effective August 1st, 1901, could not lessen the time within which the action may be brought. See Green v. Camp, 61 Fla. 256, 54 South. Rep. 363.

There was no claim that the possession of the land consisted in its being "usually cultivated or improved," as provided by the statute. But evidence was offered to show that the land had been "protected by a substantial enclosure," by the defendant under the statute for the full period of seven years beginning subsequent to August 1st, 1901, when the occupancy and possession began by the completion of the fence constituting the "substantial enclosure." The evidence tended to show that the construction of the fence was begun prior to August 1st, 1901, by the placing of posts on which the wires were put perhaps partly before August 1st, 1901, and that the enclosure was completed subsequent to August 1st, 1901, by the running of the wire fence entirely around the land, except perhaps for one or more breaks caused by water or roads. Under these

circumstances while the owner of the land had a right of action for a trespass before the completion of the enclosure, he did not have a right to an action of ejectment against the defendant, since the defendant was not living upon the land, was not cultivating or improving it and was not in actual possession or occupancy of the land without color of title until the land was "protected by substantial enclosure," by the completion of a fence to meet the requirement of the law under the facts.

As the evidence is sufficient to sustain the finding involved in the verdict that the actual occupancy and possession of the land by the defendant began subsequent to August 1st, 1901, the seven year limitation was applicable.

Over the objections of the plaintiffs that they were irrelevant, the court admitted in evidence written receipts showing that the defendant had between April and July, 1901, paid for labor in constructing the possessory fence around the land in controversy. Under the issue as to when the actual occupancy of the land was begun by the defendant, these receipts were not wholly irrelevant. They in fact tended to sustain the contention of the plaintiffs that the fence was constructed prior to August 1st, 1901.

Great latitude is to be allowed in the reception of indirect, or circumstantial evidence. It includes all evidence of an indirect nature, whether the inferences afforded by it be drawn from prior experience, or be a deduction of reason from the circumstances of the particular case, or of reason aided by experience. The competency of a collateral fact to be used as the basis of legitimate argument, is not to be determined by the

exclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the injury or to assist, though remotely to a determination probably founded in truth. White v. State, 59 Fla. 53, 52 South. Rep. 805.

Where evidence that is admitted is merely cumulative and favorable to or not harmful to the complaining party and is not forbidden by law, reversible error cannot be based thereon.

The receipts had at least some relevancy, and as they were in effect merely cumulative evidence of the fact in issue and were not harmful to the plaintiffs, the assignment of error based on the admission in evidence of the receipts is unavailing.

The rulings of the court refusing to direct a verdict for the plaintiffs and refusing to charge the jury that: "In order to bar the title of the true owner and give a title by adverse possession, there must have been such possession as the law deems adverse, and such possession must have continued for the full period of twenty years prior to this time" and that "the period of time necessary for defendant to hold by adverse possession so as to constitute a defense in this case is twenty years and not seven years," were proper in view of the fact that there was evidence that the actual occupancy and possession by the defendant of the land without color of title in fact began after the twenty year limitation ceased to be the law, there being evidence tending to show that the defendant had acquired title to the land by adverse possession beginning after July 31st, 1901, and therefore, under the seven year statute of limitations.

Among the charges given by the court are the following:

"The plaintiff has produced paper title. The defendant has produced no paper title at all, therefore, to prevail in this suit, he must show that he has held possession in the manner for the length of time necessary under the statute." "If Mr. Boley went into possession of this land before the first day of August 1901, then he must lose this suit, because the twenty year statute was in force and effect prior to the first day of August 1901, and if he went into possession prior to that date he would have to hold adversely twenty years before he could defeat the plaintiff in this action." "If he went into possession after the first day of August 1901, the seven year statute would be in force, that is if he went into possession the first day of August or any other day thereafter, the seven year statute would be in force, ————— and if he has held possession for seven years after the first day of August then he would be entitled to a verdict." If the occupation of the land by the defendant "commenced prior to August 1st, 1901, this would require an occupation of twenty years, so that the period would expire in 1922 and up to 1921 a right of action would lie with the true owner, if the occupation commenced prior to the 1st day of August 1901. If it commenced at any time after the first day of August 1901, the statute would run in seven years."

"In this case the plaintiff is entitled to recover a verdict at your hands unless Mr. Boley has shown that he entered into possession of this land after the first day of August 1901, and claims this land that is, entered into possession by enclosing it with a substantial fence and that he has maintained that character of fence con-

tinuously for seven years from the date on which he entered into possession. If he has shown that, then he is entitled to a verdict, in this suit, that is, if he had that possession and claimed the land as his against the world, and if he has shown all these facts to you by evidence that is clear and convincing, because at every point, an adverse claimant is held to the clear and positive proof of the character and extent of the possessions claimed, because, as I said in the beginning, every presumption of the law is with the true title and against the adverse claimant."

"If at any point the testimony showing an adverse holding becomes so uncertain and weak that you cannot say clearly what the facts are or whether the evidence shows the particular period of holding and the particular character of the holding whenever the testimony gets into an uncertain state, then the adverse claimant must fail in the suit because he has not shown the clear possession contemplated under the law."

At the request of the defendant the court gave the following instruction which is presented as error:

"1. If the defendant has had the premises in controversy in this case enclosed by a substantial enclosure continuously, openly, notoriously, and exclusively and adversely claiming the same as his own for the period of seven years prior to the institution of this suit, and subsequent to July 31st, 1901, such possession of the land will bar the right of the plaintiff to recover regardless of whether he has good paper titles to the premises or not."

This instruction read with the previously quoted charges given by the court of its own motion, and in view of the pleadings and evidence, means that a verdict

for the defendant may be rendered if the actual occupancy and possession of the land by the defendant under a claim of title exclusive of any other right, but not under color of title, was begun subsequent to July 31st, 1901, and continued adversely for the period of seven years prior to the bringing of this action. As this construction of the charge was the natural and proper one for the jury to apply, the charge is not erroneous.

The plaintiff in error has other contentions based upon the assumption that the twenty year statute is applicable because the construction of the fence around the land was *begun* before August 1st, 1901. But these insistences are disposed of by the holding herein that the actual occupancy and possession of the land necessary for the acquistion of a title by adverse possession under the statute, began when the land was in fact "protected by a substantial enclosure" by the completion of the fence around the land, and by the finding envolved in the verdict that the actual possession of the land by the defendant began subsequent to July 31st, 1901, when the enclosure was completed.

The following charges were given to the jury: "A substantial enclosure is that which substantially accomplishes the purpose of enclosing the land. It depends to some extent, on the character of the land, and the use to which it is to be put." "There might be a difference as to what a substantial enclosure was in different parts of the country and different kinds of land. I can conceive of an enclosure which would be regarded as a substantial enclosure for timber land or grazing land, which would not be considered a substantial enclosure for a garden plat. As I say, there is probably a difference depending upon the character of the land

and the part of the country where the enclosing is done, but the enclosure must substantial in the sense of running all the way round."

"You cannot say that an enclosure is substantial when there are breaks in it; that would defeat the whole object of the fence."

"I might have a ten acre field and have it beautifully fenced, and if I left fifty feet of it down, the effect and purpose of the fencing would be destroyed, for the object in having a fence is to have all of the land fenced. That however is a matter to be reasonably applied,—— or a principle to be reasonably applied."

"But one who fences in property is not chargable with every break that may occur in his fence by the act of other people who may cut gaps or tear down the fence or pull up his posts from time to time. It is sufficient for him to reasonably look out for his fence and when he finds there are defects to repair them from time to time, and when he does that he has kept his fence up substantially, although they may be from time to time, gaps left in it, made by other people, or breaks made by the wind or by cattle, or in any other way that might occur, but so far as the owner is concerned, he must place around the entire premises, a substantial fence and he must maintain it for the statutory period."

It is contended in effect that these charges are erroneous because they do not give the proper requirements of the fence by which land must be "protected by substantial enclosure" in order to acquire a title by adverse possession under the statute. The argument is that the fence consisting as shown by the evidence of two or three wires strung on posts and perhaps in some places in the woods on trees, the top wire being $3\frac{1}{2}$ or 4 feet

from the ground and the under wires being about 9 to 18 inches apart, is insufficient, and that this character of fence with gaps in it for roads and perhaps in one place where there was water, do not constitute a "substantial enclosure" within the meaning of the statute.

The requirement of the statute that the land shall be "protected by substantial enclosure" to acquire title by adverse possession without color of title, should be applied with reference to the facts and circumstances of each case as it arises for adjudication.

Where lands are wild and uncultivated and they are used for pasturage or for obtaining timber or fuel therefrom or some such similiar use a substantial enclosure might consist in a wire fence sufficient to indicate a purpose to claim the ownership and use of the land to the exclusion of all others and to protect the land from trespassing vehicles, riders or stock. Of course, gaps for roads through the land or over water too deep for fences might admit trespassing persons or stock, but this would not necessarily destroy the efficiency of the fence as a "substantial enclosure" of the land for purposes of occupancy under the statute to mature a title by adverse possession.

Under the facts of this case the jury was justified in the finding necessarily involved in the verdict, that the land was "protected by substantial enclosure," when the land was in the country not cultivated or improved and the evidence shows care was taken to keep in good order the fence consisting of two, if not three wires on posts or trees. There was evidence of occasional breaks of greater or less extent and duration in the fence for roads or for water; but it is manifest that there was for the full statutory period a conspicious

effort to maintain a fence around the land commensurate with the attending circumstances for the obvious purpose of exercising rights of ownership of the land and to use the land in a way to which it was suited.

In Adams v. Fryer, 59 Fla. 112, 52 South. Rep. 611, the fence consisted of wire nailed irregularly to trees, saplings and some posts, and it was not kept in place, but cattle roamed over or through the enclosure at will; and besides the proof was not definite or clear that the stated enclosure was maintained for the full period required by the statute.

The judgment is affirmed.

TAYLOR, SHACKLEFORD, COCKRELL AND HOCKER, J. J., concur.