346 So.2d 1077 (1977)
John R. WILSON, Genevieve Wilson, Esther Wilson and Carl Wilson, Appellants,
v.
Jackson B. TANNER and Pearl E. Tanner, Appellees.
No. BB-258.
District Court of Appeal of Florida, First District.
June 10, 1977.
*1078 Charles Vocelle, Brannon, Brown, Norris, Vocelle & Haley, Lake City, for appellants.
William Randall Slaughter, Slaughter & Slaughter, Live Oak, for appellees.
ERVIN, Judge.
The Wilsons brought an ejectment action against the Tanners as to a tract of land containing approximately 25 acres lying south of the Wilsons' fence line. The Tanners counterclaimed seeking title quieted to the property by reason of adverse possession. A jury returned a verdict for the Wilsons and, upon the Tanners' motion for new trial, the court set aside the jury verdict, directed a verdict in favor of the Tanners and entered final judgment in their favor. The Wilsons appeal. We reverse.
The Wilsons have legal title to the disputed tract of land and they or their predecessors have paid taxes on it for many years. However since 1905 a fence has been in existence which marks the northern boundary of the disputed property. The tract was open to the Tanners but closed to the Wilsons, although not so sufficiently as to restrict them from hunting and fishing on the property. In 1970, appellant Carl Wilson advised Jackson Tanner that since the fence was in poor condition it would be necessary to replace it and have the property line surveyed so that the new fence would be placed on the true line. The survey revealed that the fence line was not the true property line. Hence this action.
Only a portion of the property involved here is susceptible to cultivation. The tract includes a deep natural gorge, trees, waste areas, seepage and springs as well as a large pond. The Tanners sufficiently showed that they adversely possessed portions of the disputed tract by farming it for the required statutory period subsequent to the time it was conveyed to them, i.e., from 1942 through 1975. Since, however, it is undisputed that the Tanners did not claim the property either under color of title nor did they return it for taxes at any time subsequent to 1942, when they acquired title to their property adjoining the disputed tract, they may not claim title by adverse possession unless they can prove that the possession of their predecessors for seven years prior to July 1, 1939[1] was open, notorious, hostile and continuous to the rights of the Wilsons and their predecessors.[2] Moreover it was necessary that proof of such possession be clear and convincing. Hyer v. Griffin, 55 Fla. 560, 46 So. 635 (1908).
Turning to the two elements relating to proof of occupancy, i.e., substantial enclosure or cultivation or other improvements, the evidence shows that the property was fenced for the statutory period of time prior to the amendment of the statute on July 1, 1939. Whether the fence was indeed a substantial enclosure, however, is a question of fact to be determined by the jury. Wicker v. Williams, 137 Fla. 752, 189 So. 30 (1930). In Adams v. Fryer, 59 Fla. 112, 52 So. 611 (1910), the court stated that where the enclosure was such that the cattle of the neighborhood roamed through and over it at will, it was not substantial as required by the statute. In Baugher v. Boley, 63 Fla. 75, 58 So. 980 (1912), a jury's verdict finding for one who relied upon title *1079 by adverse possession was upheld when the evidence at trial showed that care was taken to keep in good order the fence enclosing the property involved. In the case before us there was no evidence concerning the condition of the fence during the statutory period of time claimed. We know from this record only that the fence was in such disrepair in 1970 that the Wilsons took it upon themselves to have a new survey prepared so that another fence could be established on the correct property line. The jury was instructed by the court on the requirement of a substantial enclosure. We may only conclude that the jury, having been appropriately instructed, decided that the Tanners had not met their burden of establishing that the fence was such a substantial enclosure. We see no reason to disturb its verdict in this regard.
Concerning the second element that the land be cultivated or improved, we also believe it was error to disregard the jury verdict. In the absence of adequate proof that the property be substantially enclosed, it was necessary for the Tanners to show that their predecessors continuously and without interruption cultivated or improved the acreage for seven years. Such continuity of possession must be shown clearly, definitely and with accuracy. E.g., Atlantic Coast Line R. Co. v. Seward, 112 Fla. 326, 150 So. 257 (1933); Dallam v. Sanchez, 56 Fla. 779, 47 So. 871 (1908). Thus the moment possession is broken it ceases to be effectual for then the law restores constructive possession to the owner. 1 Fla.Jur., Adverse Possession, section 25.
In the case before us, after the verdict of the jury had been returned, motion for new trial was filed wherein it was alleged, inter alia, that the court erred when it failed to grant defendants' motion for directed verdict. The relief requested however was only for new trial. The court's order on the motion not only set aside the verdict, it also directed a verdict for defendant, stating it "does hereby enter up a judgment in favor of the defendants."
Aside from the problem inherent in the court's order directing verdict against the Wilsons when they were not on notice that such relief was sought, even had notice been afforded we are of the opinion that the order was incorrectly entered. What the court did, although not called upon to do, was to enter judgment in accordance with motion for directed verdict. This, if properly moved for, would have been pursuant to Fla.R.Civ.P. 1.480(b).
Since, under the present Florida practice, there is no procedure relating to judgments notwithstanding verdicts, the order entered by the court will be treated by us as a judgment in accordance with motion for directed verdict. See Hall v. Ricardo, 331 So.2d 375 (Fla. 3rd DCA 1976). Nevertheless it is helpful to consult those cases in which judgments notwithstanding verdicts were formerly entered to determine an appellate court's responsibility on review of such orders. The rules governing motions for judgments n.o.v. are substantially the same as those relating to the disposition of motions for directed verdict. The trial judge is authorized to grant a motion for judgment n.o.v. only if there is no evidence or reasonable inferences to support the opposing position. E.g., Brown v. Walker, 306 So.2d 209 (Fla. 1st DCA 1975); Stirling v. Sapp, 229 So.2d 850 (Fla. 1969). Moreover a judgment n.o.v. should be awarded with extreme caution "since the granting thereof holds that one side of the case is essentially devoid of probative evidence." Brown v. Walker, supra, at 210.
When we examine the record we fail to find that there is either no evidence or reasonable inference to support the opposing position. We note that Luke Henderson testified in 1975 that a portion of land had been cultivated by the Tanners' predecessors the preceding 65 years. Johnny Wilson stated however that in 1935 very little of the tract was under cultivation. Jackson Tanner testified that in 1928 and 1929 he helped cultivate the property when he lived on it with his aunt. Clayton Pope knew that the fence had been there for 35 to 40 years prior to 1975 and stated that his nephew had farmed the land south of the fence for the same period of time. B.T. *1080 Niblack testified that for the past 55 years he was familiar with the fence line and while he stated that he did not know whether the Wilsons had exercised any control or use of the land south of the fence, nevertheless a large number of unidentified people had farmed up to the fence. Carl Wilson testified that he had seen only the Tanners farm the property since their acquisition of their adjoining property in 1942.
While it may not have been necessary that the identity of the Tanners' predecessors to the property in dispute be established since the defendants' claim was not based upon color of title, still their identity and the duration of their possession would have been corroborative of the Tanners' claim to an unbroken continuous possession adverse to the Wilsons' title for the full statutory period. We know from this record that the Tanners received their deed to their property from the Floyds in 1942. How long the Floyds were on the property is silent. We know that a family named Sasnet tended it for some unknown period of time as well as Jackson Tanner's aunt. We know also that tenants farmed the property, but still the record is silent as to the length of their stay. What we do not know, by clear and positive proof, is what person or persons possessed the property involved for the full statutory period, or whether indeed there was unbroken, continuous possession for seven years.[3]
In Meyer v. Law, 287 So.2d 37 (Fla. 1973), our Florida Supreme Court held that a record title holder to disputed property would prevail over one who claimed adversely, even though the adverse party had maintained a fence enclosing the disputed property. While the case turned on issues different from those before us, we think the following language from the opinion is appropriate to our situation:
"A man who owns some virgin land, who refrains from despoiling that land, even to the extent of erecting a fence to mark its boundaries, and who makes no greater use of that land than an occasional rejuvenating walk in the woods, can hardly be faulted in today's increasingly `modern' world. Public policy and stability of our society, therefore, require strict compliance with the appropriate statutes by those seeking ownership through adverse possession." 287 So.2d at 41.
It was within the province of the jury to determine that the defendants had not overcome the statutory presumption that title to the tract was in the record owner.[4]
The judgment of the trial court quieting title to the disputed tract of land in favor of the defendants is reversed with directions that the court enter judgment in favor of the plaintiffs in accordance with the verdict returned by the jury.
MILLS, Acting C.J., and SMITH, J., concur.
NOTES
[1] On July 1, 1939, Ch. 19254, § 2, Laws of Florida (1939), became effective requiring that in addition to occupancy of the land for seven continuous years, an adverse possessor must return the land for taxes.
[2] For example, section 2936(1), vol. 2, Revised General Statutes of Florida (1920), requires that when there is an actual occupancy of premises not under color of title, the occupancy shall be in existence for seven years. Subsection two of the above section requires that the land shall be deemed to be possessed only: "1) where it has been protected by substantial enclosure; or, 2) where it has been usually cultivated or improved."
[3] The facts here are easily distinguishable from those in Porter v. Lorene Invest. Co., 297 So.2d 622 (Fla. 1st DCA 1974), in which we affirmed a judgment quieting title to one claiming by adverse possession where the evidence clearly showed that in 1923, Lorene Investment Co.'s predecessor in title, Angus Alderman, erected a fence which completely enveloped the area involved and was sufficient to turn hogs and cows. He also cultivated a portion of the land. He turned possession of it over to B.J. Alderman in 1929, who in turn deeded it to Lorene in the late 1960's. Thus there was clear, positive proof of unbroken and continuous adverse possession for the required seven years.
[4] § 95.13, Fla. Stat. (1975) provides that the person establishing legal title to the property shall be presumed to have possessed it, and the occupancy of the property shall be deemed to be in subordination to the legal title unless the property was possessed adversely for seven years.