385 So.2d 1123 (1980)
James P. GRANT and Audrey S. Grant, Appellants,
v.
Bobby STRICKLAND et al., Appellees.
No. NN-205.
District Court of Appeal of Florida, First District.
June 30, 1980.
*1124 W.J. Oven, Jr., Tallahassee, for appellants.
John H. Cotten of Cotten, Shivers, Gwynn, Daniel, Kelley & Arrington, Tallahassee, for appellee.
ERVIN, Judge.
Plaintiffs-appellants appeal from a final judgment following a non-jury trial denying their claim that they had acquired by adverse possession without color of title a certain strip of land located in Wakulla County, Florida. We affirm.
Because appellants' claim is not under color of title, it was necessary that they establish continuous, unbroken adverse possession for a period of seven years[1] by clear and convincing evidence[2] showing either that the boundary strip they claim was substantially enclosed or usually cultivated or improved.[3] Additionally, since appellants did not show that they returned the disputed land for taxes, it was necessary that their adverse claim mature seven years before June 5, 1939, the date the statute was *1125 amended requiring the land to be so returned.[4]
Although appellants argued the disputed strip was cultivated for the required seven years, evidence on that point was conflicting, at best, and, as it was a question for the trier of facts, we do not disturb the trial court's finding.[5] One claiming adverse possession must prove each essential element of the claim "by clear and positive proof... ."[6] The claim cannot be "established by loose, uncertain testimony which necessitates resort to mere conjecture."[7] Appellants' claim is based primarily upon the fact that a substantial fence ran along the property's northern boundary for more than seven years. While their evidence clearly and convincingly showed that the fence ran north of the true boundary separating the parties' properties for the requisite seven-year period, there was no showing by clear and convincing proof that either appellants' property or the disputed strip was protected by a substantial enclosure on all sides during the period.[8] Appellants' witnesses testified without contradiction that their predecessors' fence ran along the south edge of a county road as far back as 1912 and until 1921; yet their testimony conflicted on whether the fence was joined by fences or natural barriers on other sides of the disputed property.
To enclose is variously defined as "a: to close in ...: surround . .; specif.: to fence off or in (common land) in order to appropriate to individual use ..."[9] The statute's requirement that land claimed adversely be substantially enclosed is not complied with when it is fenced on only one of its borders.[10] Natural barriers, such as navigable water, may suffice to provide part of a substantial enclosure.[11] There may also be gaps in the enclosure; such interruptions however do not dissipate the substantial character of the enclosure so long as "there was for the full statutory period a conspicuous effort to maintain a fence around the land ... for the obvious purpose of exercising rights of ownership" to the exclusion of all others (e.s.).[12] The evidence here was lacking that appellants or their predecessors made a "conspicuous effort" to enclose the disputed land so as to provide notice that their possession was to the exclusion of the rights of all others.
From this record we cannot say that the trial judge, acting as trier of fact,[13] erred in concluding that appellants had not overcome the statutory presumption that one holding "legal title to the property shall be presumed to have been possessed of it within the time prescribed by law."[14]
*1126 LARRY G. SMITH, J., specially concurs.
BOOTH, J., dissents.
LARRY G. SMITH, J., specially concurring.
Although I agree, to some extent, with the discussion and application of the law as stated in the dissenting opinion, after a careful review of the record I am compelled to concur in the affirmance of the decision of the lower court. The conclusion reached by the trier of facts is always entitled to great weight; and this principle is especially applicable in a case of this kind. Here, the trial judge was required to sift through the testimony of the parties and a great many witnesses, whose testimony covered conditions and events spanning more than half a century and whose bias or interest in the outcome of this case were in some instances obvious, and in other instances perhaps not quite so obvious. Furthermore, in addition to those reasons for affirmance expressed by Judge Ervin, I find the record lacking in "clear and positive proof" that the purported possession by appellants' predecessor in title prior to 1939 was adverse and hostile to the legal titleholder so as to compel a different result, even if the other requirements of adverse possession were met by proof meeting the test of certainty required in such cases.
BOOTH, J., dissenting:
I do not agree that the law requires fencing of plaintiffs' 50-acre tract of land, title to which is not in dispute, in order to establish title by adverse possession to a disputed boundary strip on the northern perimeter of the tract. Equally unacceptable is the alternative proposed of fencing "on all four sides" of the disputed boundary strip. There is no law in Florida supporting these interpretations of Florida Statutes § 95.18.[1] That statute, derived[2] from a New York statute,[3] requires, as to fencing that the disputed property be "protected by substantial enclosure." New York cases hold that this language requires, in a boundary dispute, that the protective enclosure be one which incorporates the disputed strip of land into the larger tract.
In Knowles v. Miskela, 11 A.D.2d 589, 200 N.Y.S.2d 713 (1960), where the disputed boundary line was protected by wire fence, there was a lake on the west side, a fence on the south, and other land of the claimed adverse occupant to the north, the statutory requirement was met. In Post v. Irons, 36 A.D.2d 630, 353 N.Y.S.2d 572 (1974), the court ruled that the statute was complied with where the strip in dispute "was available only from plaintiff's lot" by reason of fences. Thus, where the disputed strip is only accessible by scaling fences or trespassing over land of the plaintiffs, the statutory requirements are met. In McCosker v. Rollie Estates, Inc., 7 A.D.2d 865, 182 N.Y.S.2d 35 (1959), the court ruled plaintiff had obtained title by adverse possession without color of title, holding:
The entire 50-foot strip was enclosed as part of the main property by a hedge wall, which is sufficient to constitute an enclosure within the meaning of Section 40 of the Civil Practice Act.
At common law and in Florida, the term "enclosure" is not limited to a fence, but *1127 includes other barriers, both natural and manmade. What is required to constitute a substantial enclosure depends on the nature of land claimed and the particular facts of each case. The enclosure must be "commensurate with the attending circumstances," as was held in Baugher v. Boley, 63 Fla. 75, 58 So. 980, 984 (1912):
The requirement of the statute that the land shall be "protected by substantial inclosure," to acquire title by adverse possession without color of title, should be applied with reference to the facts and circumstances of each case as it arises for adjudication.
.....
... [I]t is manifest that there was for the full statutory period a conspicuous effort to maintain a fence around the land commensurate with the attending circumstances for the obvious purpose of exercising rights of ownership of the land and to use the land in a way to which it was suited.
The rule of Baugher v. Boley, supra, requires consideration of the circumstances of each case and common sense application of the "substantial enclosure requirement." It would violate that rule to require that a boundary strip be completely and separately fenced off, because, unlike possession of an entire tract of land, possession of a boundary area is invariably an adjunct to the possession of a larger adjoining tract. Separate fencing would here, and in most instances, be inconsistent with normal use. It is not required under the statute.
A requirement that there be a fence around the entire tract in order that a disputed boundary strip be "protected by substantial enclosure" is equally contrary to the rule, since it takes no consideration of the differences between possession of a boundary and of an entire tract, and because it requires enclosure of large acreages not in dispute.
The dispute in the instant case arose from a recent survey which the trial court found established a "jog" in the section line dividing the lands of the plaintiffs and those of the defendants and located the true line some 194 feet further south. Plaintiffs' predecessors have been in actual possession of the property since the last century. Adverse possession without color of title is claimed to that portion of the boundary strip which was cultivated and maintained under fence for a seven-year period[4] prior to the 1939 requirement of payment of taxes. Plaintiffs' predecessors' good-faith reliance on the regular section lines, both in payment of taxes and deeding of the property from generation to generation, prevents their claim from being under color of title. Due to the jog in the section line, the disputed strip is not included in the description used for deeds and payment of taxes.[5]
William Spears, ancestor of Audrey Spears Grant, took title on January 15, 1863, to 60 acres of land located in the northeast quadrant of Section 13, Township 3 South, Range 2 West. Adjoining immediately to the north and described as located in Section 12 of the same township and range is the land owned, since 1871, by members of the Strickland family. Both families resided on their respective properties and farmed their land. A country road, described as a "wagon trail" originally, has, for time immemorial, run east and west between the properties roughly following for half a mile or so the supposed section line dividing Sections 12 and 13. The supposed *1128 location of the section line between Sections 12 and 13 coincided, and met on the east in a common corner with the east-west section line dividing Sections 7 and 18, further substantiating the belief that this was the true line. For many years prior to 1939, and at least as early as 1910, the Spears family had erected and maintained a substantial fence along the northern boundary of their property and just south of the country road. Other fences and cultivating of the property are described more fully by testimony to follow.
Further history of the property shows that William Spears deeded the land to Daniel Spears in 1877, and Daniel's wife, Rebecca, deeded it after her husband's death to her son, J.F. Spears. Plaintiff Audrey Spears Grant is the present title holder.
In 1888, Daniel and Rebecca Spears deeded two acres of property in the Northeast corner of Section 13 to the Trustees of the Whiddon Lake Baptist Church. This property had been maintained under a succession of fences. Included within the property deeded to the church and presently existing as it has for more than 90 years, is a graveyard. The order of the trial court locates the section corner inside the graveyard. That determination is not an issue on this appeal, but it should be noted that, for many years, the presumed northeast corner of Section 13 was located at the northeast corner of the property occupied by the church and cemetery. The deeding of this property to the church by the Spears, followed by the use and occupation of the property by Spears' grantee, was hostile to the title of the Stricklands to the disputed strip.
The trial court determination, based on conflicting evidence of the location of the line between Sections 12 and 13, and its finding that there was no boundary by agreement or acquiescence are not issues on appeal. The remaining question, and the sole issue presented, is the trial court's determination that there had been no acquisition of title by adverse possession to the disputed boundary strip.
In affirming the trial court, this court imposes upon the plaintiffs here a burden beyond that required by the law of Florida, and fails to accord due consideration to the uncontradicted testimony of fencing and cultivating beginning at least as early as 1910.
The testimony of Plaintiff Audrey Spears Grant, who was born and reared on the property and married and moved away in 1931, was as follows:
Q Was there a fence all the way around your property?
A Yes.
Q. On all sides?
A. Right.
Q. And what type fence was that?
A Well, there was a wire fence on the west side. There was an old, one of those old picket fences on the west side. My brother lived just south of us and between us, our property and his property was one of those old picket fences. I don't know what the name is of them. And then on the east side from where the old barn, and the garden was  the garden had a high picket fence around it and there down to my brother's property was rail.
Paul Grant testified that he became familiar with the property several years prior to his marriage to Audrey in 1931. During that period, there was a fence around the property, although it was dilapidated in places, and the property was farmed. He testified as to the fences on the west end of the disputed strip between Spears' farm and that of Thompson, and the old fence on the east end of the strip between the churchyard and the Spears' farm. The foregoing testimony of plaintiffs is uncontradicted and is supported by testimony of non-party witnesses, such as Sidney Durrance and Ralph Strickland.
Sidney Durrance, age 76, testified that he lived down the road from the disputed strip from 1912 to 1921, on what was known as the "old Durrance place," a farm three-quarters of a mile west of the Whiddon *1129 Lake Church. He testified that, with the exception of "Green's flat rock," the entire property was cultivated and fenced during the time he lived down the road from the property. He specifically testified that the land south of the road was cultivated in corn and peanuts and fenced during that time.
Ralph Strickland, 65-year-old first cousin of defendants, has been familiar with the property all his life, and his own property is on the disputed section corner north of the road. He testified as to the fences around the Spears' property. The only fence he could "not recall" was the one on the northern boundary. The existence of this fence protecting the boundary strip for the critical time period is conceded.
The critical time period in this case was from 1910, when testimony established fences and cultivation of the property, to 1939, when the statute requiring return of property for taxes became effective. Uninterrupted actual possession for any seven-year period within those years was sufficient to give title to the disputed strip good as against all the world, including the legal title holder. Testimony of witnesses who were familiar with the property in the 1940's and 1950's, after farming ceased and the fences had disappeared, is not in conflict with testimony as to fences existing two decades earlier and does not affect the possession established or title acquired prior to 1939. It is also to be noted that, in the '50's, the road adjacent to the Spears/Grant northern fence line was widened and moved further to the south, destroying what was left of the boundary fence, but not affecting, of course, any boundary previously established by adverse possession.
I do not agree that the evidence on cultivation and fencing was conflicting. On the contrary, the evidence pertinent to the years in question is undisputed, and thus renders applicable the rule, as most recently stated, in Edwards v. Hardin Properties, 313 So.2d 82, 84 (Fla. 2d DCA 1975):
On the precise point, and apart from appellant's [adverse claimant's] own testimony, it was undisputedly established by two disinterested, native and resident septuagenarians, ... that such land has been continuously occupied and cultivated as a small family-type farm, raising livestock and vegetables since 1910 and was, during that time and indeed up to the present time, substantially enclosed by fencing.
.....
Now we are aware, of course, that the trial court, as the trier of fact, has the power and duty to evaluate the credibility of the witnesses. But it is also true that the reasonable, uncontradicted sworn testimony of a witness cannot and must not be ignored unless some reason appears why his testimony may not be credible. Here, there is nothing appearing which would operate to discredit either of the aforesaid witnesses. The record shows them to be quite alert and aware despite their ages, they testified as to matters of fact, not opinion, and no attempt was made by appellee either in cross-examination or otherwise to impeach them. Their testimony should affirmatively have been credited.
In the instant case, the location of the correct section line was determined by court order in 1979, 117 years after plaintiffs' predecessors took title and established their homestead and farm on the property. Defendants' forebearers lived and farmed across the road for almost as many years. Both families acted in good faith in their holding out, use and occupancy of their respective properties. The Spears family paid taxes on their lands and deeded lands believed to be in Section 13. These grantees have also been in possession for many years. The community at large considered the land south of the road to belong to the Spears. Grantees of the Spears, in possession for many years, relied on the Spears' actual long-standing possession in purchasing property which was included land within the now disputed strip. There was continuous, actual occupancy of the property as a family farm, an occupancy which extended to and included the disputed *1130 strip. Now, more than half a century after farming has ceased and fences are gone, the legal title holders assert ownership based on a recent survey and determination by the court of a jog in the section line. Under these circumstances, the law of adverse possession operates, not as a punishment to the legal title owner but to protect the long-standing and, in this case, good faith, actual possession of the disputed property.[6]
I dissent.
NOTES
[1] Section 95.18(1), Fla. Stat. (1975).
[2] Hyer v. Griffin, 55 Fla. 560, 46 So. 635 (1908).
[3] Section 95.18(2), and see § 95.16(2).
[4] Ch. 19254, Section 1, Laws of Florida (1939).
[5] Compare, Kerrigan v. Thomas, 281 So.2d 410, 414 (Fla. 1st DCA 1973).
[6] Downing v. Bird, 100 So.2d 57, 64 (Fla. 1958).
[7] Id.
[8] The dissent's assertion that it is unfair or without basis in Florida law to require either that the boundary strip be "substantially enclosed" or that the appellants' lands contiguous to the disputed strip be substantially enclosed with it is not well taken. Proof of adverse possession under color of title is met with proof that lands of the claimant contiguous to the disputed strip were substantially enclosed with the disputed strip for the statutory period. Seaboard Air Line R. Co. v. California Chemical Co., 210 So.2d 757 (Fla. 4th DCA 1968); Kerrigan v. Thomas, 281 So.2d 410 (Fla. 1st DCA 1973); Meyer v. Law, 287 So.2d 37 (Fla. 1973); 1974 Laws of Florida, § 74-382; Seddon v. Harpster, 369 So.2d 662, 665 (Fla. 2d DCA 1979). Surely proof requirements under § 95.18 are no less exacting.
[9] Webster's Third New International Dictionary (Unab. ed. 1967).
[10] See Baugher v. Boley, 63 Fla. 75, 58 So. 980 (1912); Porter v. Lorene Invest. Co., 297 So.2d 622 (Fla. 1st DCA 1974).
[11] Tampa Mortg. & Title Co. v. Smythe, 109 So.2d 202 (Fla. 2d DCA 1959).
[12] Baugher v. Boley, supra, at 984.
[13] The question of whether a fence constitutes a substantial enclosure is normally one for the jury. Wilson v. Tanner, 346 So.2d 1077, 1078 (Fla. 1st DCA 1977).
[14] Section 95.13.
[1] Florida Statutes § 95.19 (now § 95.18), as it provided at all times pertinent here:

For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:
(1) Where it has been protected by substantial enclosure, or,
(2) Where it has been usually cultivated or improved;
[2] 7 Powell, Real Property, § 1018, at Note 19 (1979).
[3] New York Statute, Real Property Actions and Proceedings Law, § 522 (formerly § 40, Civil Practice Act):

For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases, and no others:
1. Where it has been usually cultivated or improved.
2. Where it has been protected by a substantial inclosure.
[4] Since 1901, the time period for adverse possession without color of title has been seven years. Chapter 4916, Laws of Florida.
[5] Order of the trial court, in pertinent part, as follows:

In view of the court's finding as to the true boundary line, the lands in dispute necessarily lie in Section 12, and to such lands the plaintiffs do not have color of title. The issue then, is whether or not the plaintiffs have proved that for not less than seven years that they or their predecessors in title have erected a substantial fence around the disputed property, or have usually cultivated or improved the whole of the property continuously so as to acquire title by adverse possession without color of title. The court finds that there has been no substantial enclosures [sic] around the property nor has the property been usually cultivated or improved.
[6] Osceola Fertilizer Co. v. Beville, 86 Fla. 479, 98 So. 354, 356 (1923):

The policy of the law is not to punish those who neglect to assert their rights, but to protect those who have continued in possession of lands for the time specified by statute, under or without color of title.