575 So.2d 679 (1991)
Betty Jo BAILEY, Appellant/Cross-Appellee,
v.
H. Dalton HAGLER, Jr., Appellee/Cross-Appellant.
No. 90-1291.
District Court of Appeal of Florida, First District.
January 25, 1991.
Rehearing Denied March 27, 1991.
*680 Jacalyn N. Kolk of Hilton, Hilton, Kolk & Penson, Panama City, for appellant/cross-appellee.
Floyd A. Griffith of Griffith & Griffith, Marianna, for appellee/cross-appellant.
JOANOS, Judge.
This is an appeal and cross-appeal from a final judgment establishing a boundary line. The issues presented are (1) whether title to the disputed property ripened in the appellant, Betty Jo Bailey, through adverse possession; and (2) whether the conduct of the predecessors in interest of appellee, H. Dalton Hagler, Jr., established a boundary by acquiescence. We affirm in part.
In 1983, Mr. Hagler purchased property formerly owned by M & B Railroad Company, located adjacent to the Bailey property. After the purchase, Mr. Hagler obtained a survey which indicated that a portion of Mrs. Bailey's fence encroached upon his property. In February 1987, on advice of counsel, Mr. Hagler filed suit essentially to force removal of the fence. A subsequently filed amended complaint included a request to quiet title.
Evidence adduced at trial established that when Mr. Hagler purchased his property, he did not know its boundaries or its approximate acreage. Mrs. Bailey testified that the section line she identified as marking the boundary of the Bailey property from the M & B Railroad property had been recognized as the section line for a hundred years. The southern boundary of the Bailey property historically had been marked by a fence south of a drainage ditch. In 1979, with Mrs. Bailey's acquiescence, the ditch was relocated by the county to rectify flooding problems on Highway 20. The fence was relocated at the same time, so as to run along the new drainage ditch. Mrs. Bailey paid for the fencing materials, and the county provided the labor. Evidence of the old fence remains at the site of the original ditch. Testimony of an elderly resident of the area established that in 1925 or 1926, the Bailey family had a sawmill at the southernmost portion of this land. Mrs. Bailey's testimony reflects that she has kept livestock on the land continuously, and that she timbered the land in 1958 or 1959, and again in 1983. In addition, she has permitted a neighbor to park cars on the land for many years.
Because she questioned the result of the survey performed for Mr. Hagler, Mrs. Bailey obtained the services of a different surveyor to survey the disputed property. Ultimately, three surveyors became involved in an effort to locate the north line of Section 33, Township 1 North, Range 8 West, deemed to be the key starting point to resolve the boundary dispute in this case. The surveyors identified three possible locations for the original section line, but agreed the original line could not be established with certainty. Mrs. Bailey claimed to the southernmost line identified by the surveyors as a possible section line between Sections 28 and 33. This southernmost line has been used by the Department of Transportation in purchasing right-of-way for a drainage ditch. The middle line, north of the line claimed by Mrs. Bailey, is marked by fencing and a zig-zag line of monuments, only some of which could be explained by the surveyors. The northern-most line was based on the effort of Mr. Hagler's surveyor to recreate a lost corner, and was thought to be the closest retracement *681 of the original Government Land Office section line. The surveyors agreed that the disputed property contained evidence of occupation to the middle line and to the southernmost line.
The trial court established the Bailey-Hagler dividing line as the middle line suggested by the surveyors. In addition, for purposes of future transactions only, the trial court established the section line between Sections 28 and 33 as the northern-most line suggested by the surveyors.
The first issue is whether there was sufficient evidence that title to the disputed property vested in Mrs. Bailey through adverse possession. One claiming title by virtue of adverse possession under color of title "does not have to have paper title accurately describing the disputed property as long as that area is contiguous to the described land and [meets one of the criteria enumerated at section 95.16(2)(a)-(d)]."[1]Seddon v. Harpster, 403 So.2d 409, 411 (Fla. 1981). See also Elizabethan Development, Inc. v. Magwood, 479 So.2d 251 (Fla. 2d DCA 1985). The "color of title" doctrine is available only where the instrument purporting to be a conveyance has been accepted in good faith and in the honest belief that it vested good title in the claimant. Bonifay v. Dickson, 459 So.2d 1089, 1097 (Fla. 1st DCA 1984); Bonifay v. Garner, 445 So.2d 597 (Fla. 1st DCA 1984). This requisite good faith belief can be found in instances where the grantees did not know that their grantors had no interest in the disputed property. Bonifay v. Dickson, 459 So.2d at 1097.
Each essential element of an adverse possession claim must be proven by clear and convincing evidence. Downing v. Bird, 100 So.2d 57, 64 (Fla. 1958); Grant v. Strickland, 385 So.2d 1123, 1125 (Fla. 1st DCA), review denied, 392 So.2d 1374 (Fla. 1980). The rule has been stated thusly: "Adverse possession is established by the occupant's taking possession with the belief that the land is his up to the mistaken line and so holding under a claim of title to the line." Seaboard Airline Railroad Co. v. California Chemical Co., 210 So.2d 757 (Fla. 4th DCA 1968).
Under section 95.18, one claiming without color of title must show open, continuous, actual hostile possession, and payment of all taxes for a period of seven years with a return of the land for taxes during the first year of occupation, and the enclosure or cultivation of the land for seven years.[2] *682 DeRoche v. Winski, 409 So.2d 41 (Fla. 2d DCA 1981). However, if title to the disputed area vested by adverse possession without color of title prior to 1939 when the statute applicable was amended, the property owner is not required to show that the land was returned for taxes. Lawson v. Murray, 365 So.2d 744, 746 (Fla. 1st DCA 1978); Porter v. Lorene Investment Co., 297 So.2d 622, 625 (Fla. 1st DCA 1974). Prior to 1939, proof of occupation could be shown by evidence of (1) a substantial enclosure, or (2) cultivation or other improvements. Lawson v. Murray, 365 So.2d at 746.
In the instant case, it appears that Mrs. Bailey's claim to the disputed property is supportable under either the doctrine of adverse possession with color of title, or adverse possession without color of title. The contiguous property was conveyed to her by quit-claim deed from her mother-in-law in 1957, in good faith that the deed conveyed the disputed property. The deed was recorded, and the record reflects that at the time Mrs. Bailey took possession, the lawyer who drew up the deed, together with other family members, showed her what was believed by them to be the southern boundary of the property, which area encompassed the portion of the property now at issue. Mrs. Bailey's unrefuted testimony indicates that from 1957 until 1979, she kept livestock on the property, and a fence enclosed the disputed area. In 1979, the county's relocation of the drainage ditch occasioned the relocation of Mrs. Bailey's fence. Moreover, the abstract prepared for Mrs. Bailey indicates that the Bailey claim dates at least as far back as 1917. Therefore, it appears that the trial court could properly find that Mrs. Bailey was entitled to claim adverse possession without color of title, because her predecessors' interest existed prior to the 1939 amendment which required a return for taxes on disputed property to support such a claim.
The second issue is whether there was sufficient evidence that the conduct of Mr. Hagler's predecessor in interest established a boundary by acquiescence between the property claimed by the respective parties. The elements of the doctrine of boundary by acquiescence are: (1) uncertainty or dispute as to the location of the true boundary, (2) location of a boundary line by the parties, and (3) acquiescence in such location for the prescriptive period. Shaw v. Williams, 50 So.2d 125, 126 (Fla. 1950); Baker v. Niess, 496 So.2d 215, 218 (Fla. 1st DCA 1986). The element of uncertainty or dispute may be satisfied even though the parties are not overtly hostile. Baker v. Niess, 496 So.2d at 218; Sanlando Springs Animal Hospital, Inc. v. Douglass, 455 So.2d 596 (Fla. 5th DCA 1984), review denied, 461 So.2d 114 (Fla. 1985). However, uncertainty in the context of boundary by acquiescence means "an actual lack of knowledge on the part of both land owners of the true boundary line." Baker v. Niess, quoting Shaw v. Williams, 50 So.2d at 128. In appropriate circumstances, the placement and duration of a fence, absent another explanation for its specific location, will constitute sufficient evidence of the requisite doubt or uncertainty to establish a boundary by acquiescence. McDonald v. Givens, 509 So.2d 992, 993 (Fla. 1st DCA 1987); McDonald v. O'Steen, 429 So.2d 407, 409 (Fla. 1st DCA 1983).
The record in the instant case demonstrates the existence of the element of uncertainty as to the location of the true boundary. Although Mrs. Bailey did not express doubt as to the location of the southern boundary of her property, subsequent surveys suggest that her perception in this regard may have been mistaken. The record contains no evidence that Mr. Hagler's predecessor in interest took any action to remove Mrs. Bailey's fence, or to *683 otherwise challenge her claim to the disputed property in any way. Such inaction can be seen as implicit acquiescence in the boundary line established by Mrs. Bailey's fence and by the parties' conduct.
The final judgment in this case does not set forth the reasoning underlying the trial court's determination of the boundary issue. Nevertheless, there is support in the record for the trial court's resolution of the boundary dispute. Therefore, we affirm the final judgment in this regard. On the other hand, the trial court's determination of a boundary line for purposes of future transactions only was not properly before the court for resolution, because not raised by either party. See Garden Suburbs Golf & Country Club, Inc. v. Pruitt, 156 Fla. 825, 24 So.2d 898, 901 (1946); Coleman v. Davis, 106 So.2d 81, 85 (Fla. 1st DCA 1958); Ephrem v. Phillips, 99 So.2d 257, 263 (Fla. 1st DCA 1957); Safeco Title Insurance Co. v. Reynolds, 452 So.2d 45, 48 (Fla. 2d DCA 1984); Passio v. Passio, 309 So.2d 595 (Fla. 3d DCA 1975).
Accordingly, the final judgment is affirmed with respect to the boundary line established between the Bailey and Hagler properties, but that portion of the final judgment which purports to establish a section line between Sections 28 and 33 for purposes of future transactions is stricken as surplusage.
BARFIELD and WOLF, JJ., concur.
NOTES
[1] § 95.16, Fla. Stat. (1985), provides:

95.16 Real property actions; adverse possession under color of title 
(1) When the occupant, or those under whom he claims, entered into possession of real property under a claim of title exclusive of any other right, founding the claim on a written instrument as being a conveyance of the property, or on a decree or judgment, and has for 7 years been in continued possession of the property included in the instrument, decree, or judgment, the property is held adversely. If the property is divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract. Adverse possession commencing after December 31, 1945 shall not be deemed adverse possession under color of title until the instrument upon which the claim of title is founded is recorded in the office of the clerk of the circuit court of the county where the property is located.
(2) For the purpose of this section, property is deemed possessed in any of the following cases:
(a) When it has been usually cultivated or improved.
(b) When it has been protected by a substantial enclosure. All contiguous land protected by the enclosure shall be property included within the written instrument, judgment, or decree, within the purview of this section.
(c) When, although not enclosed, it has been used for the supply of fuel or fencing timber for husbandry or for the ordinary use of the occupant.
(d) When a known lot or single farm has been partly improved, the part that has not been cleared or enclosed according to the usual custom of the county is to be considered as occupied for the same length of time as the part improved or cultivated.
[2] § 95.18, Fla. Stat. (1985), provides:

95.18 Real property actions; adverse possession without color of title. 
(1) When the occupant or those under whom he claims have been in actual continued occupation of real property for 7 years under a claim of title exclusive of any other right, but not founded on a written statement, judgment, or decree, the property actually occupied shall be held adversely if the person claiming adverse possession made a return of the property by proper legal description to the property appraiser of the county where it is located within 1 year after entering into possession and has subsequently paid all taxes and matured installments of special improvement liens levied against the property by the state, county, and municipality.
(2) For the purpose of this section, property shall be deemed to be possessed in the following cases only:
(a) When it has been protected by substantial enclosure.
(b) When it has been usually cultivated or improved.