TAYLOR, J.
 

 This appeal arises from an action for injunctive relief, damages, and other remedies brought by Chemplex Industries, Inc., a New York corporation, and Chemplex Industries, Inc., a Florida corporation (collectively “Chemplex”), against Premier Lab Supply, Inc. (“Premier”), for misappropriation of trade secrets. Premier appeals the trial court’s denial of its motions for directed verdict and judgment notwithstanding the verdict and the court’s order issuing a permanent injunction against Premier. For the reasons stated below, we affirm denial of the motions for directed verdict and judgment notwithstanding the verdict, but reverse the permanent injunction order.
 

 The parties to this litigation manufacture, sell, and distribute plastic cups that are used as containers to hold specimen samples for x-ray spectroscopy and thin films that are used to secure the samples. The subject of this trade secret litigation is a thin film spooling machine. The machine is used by the parties to un-spool thin films from a large master roll and re-spool them onto smaller rolls in a shorter length. The small spool is then repackaged for resale to consumers.
 

 Chemplex sued Anthony Norelli, Maria Norelli, Donato Pompa, Cheryl Trotta, Premier, and Golf Brush, Inc. In the fifth amended complaint, Chemplex alleged that all of the individual defendants were former employees of Chemplex, and that Golf Brush, Inc., was a dissolved corporation owned and controlled by Anthony Norelli. In Count V, which contained the misappropriation of trade secrets claim against Premier under the Uniform Trade Secrets Act, § 688.001 et. seq., Florida Statutes, Chemplex alleged that it owned or possessed certain trade secrets that Premier misappropriated and used to directly compete with Chemplex. Chemplex alleged that the trade secrets included, among other things, designs for certain tools and equipment manufactured by the company,
 
 *204
 
 formulas for products, customer lists, and data and information stored on the company computer system. Chemplex requested damages, punitive damages, and injunctive relief.
 

 The parties agreed to bifurcate the trial on liability and damages on Chemplex’s claims against Premier. At the liability phase of the bifurcated trial, Chemplex established the following facts. Monte So-lazzi started Chemplex in New York in 1970 or 1971. Later he moved the company to Florida. He developed and designed all of the products, manufactured them, and determined formulations for all of the required chemicals. Solazzi and his father invented and built the spooling machine used by Chemplex. Solazzi described the spooling machine as follows:
 

 It’s a tabletop machine that has a small motor on it and has an electronic counter with a timing chain of which a large spool of thin film, much like Saran wrap, but a thicker roll, a certain width, goes through a chain, series of wheels for a timing chain, and gets respooled on a smaller spool similar to what you would have on a roll of Saran wrap at home. And it’s respooled onto this here at a specific length and packaged in a box like Saran wrap with a serrated cutting-edge.
 

 According to Solazzi, the design of the unpatented machine is very specific and involves many calculations. The machine has a timing chain with a counter. Although the components of the machine are relatively simple, the specifications took Solazzi a very long time to figure out. The machine was kept in a separate room, where only those employees operating it were permitted to enter. Chemplex was still using the machine at the time of trial, and it was very profitable.
 

 Solazzi testified that he terminated Anthony Norelli in October 1998. Soon after-wards, Norelli removed the spooling machine from the premises along with some inventory. Solazzi notified the Sheriffs Department, and they recovered the machine and some inventory from Norelli and returned them to Solazzi about five hours later.
 

 Solazzi explained that, although the spooling machine is complex in terms of its assembly, it is much easier to reproduce the machine when someone has the machine in front of him and can record the measurements of the different components and the serial numbers and model numbers of the motor and electronic counter. Solazzi testified that someone who could build the same machine could duplicate Chemplex’s entire thin film product
 
 line.
 
 He said that Premier was able to sell pre-cut rolls of thin film that directly competed with Chemplex’s products because the spooling machine was stolen and copied.
 

 At the end of the two-week trial, the jury determined that the designs for certain tools and equipment manufactured by Chemplex, which Chemplex claimed were misappropriated from them, were trade secrets. The jury found that Premier had obtained information from Chemplex that qualified as a trade secret, that Premier’s misappropriation was willful and malicious, and that Premier utilized these trade secrets to directly compete with Chemplex. The trial court denied Premier’s motion for directed verdict and motion for judgment notwithstanding the verdict.
 

 Based on the jury’s verdict, Chemplex subsequently moved for entry of a permanent injunction enjoining Premier from continuing to use its trade secrets. The trial court granted the motion and issued a permanent injunction precluding Premier from using its spooling machine or selling products derived from its spooling machine. Premier appealed the injunction, as well as the denial of its motions for direct
 
 *205
 
 ed verdict and judgment notwithstanding the verdict.
 

 Premier argues that it was entitled to a directed verdict and judgment notwithstanding the verdict on the claim for misappropriation of trade secrets because Chemplex failed to present evidence that the designs of the spooling machine were secret or that Chemplex took steps to preserve or maintain the confidentially of those secrets.
 
 [1]
 

 Under Florida law, a trial court can grant a directed verdict only when no proper view of the evidence could sustain a verdict in favor of the non-moving party.
 
 See Owens v. Publix Supermarkets, Inc.,
 
 802 So.2d 315, 329 (Fla.2001). The court must evaluate all facts in evidence and all reasonable inferences that can be drawn from those facts in the light most favorable to the non-movant.
 
 Id.
 
 These principles also apply to judgments notwithstanding the verdict.
 
 Wilson v. Tanner,
 
 346 So.2d 1077, 1079 (Fla. 1st DCA 1977) (noting that judgments notwithstanding the verdict should be granted with caution and only if no evidence or reasonable inferences support the nonmoving party’s position). The standard of review on appeal of the trial court’s ruling on a motion for directed verdict is
 
 de novo;
 
 it is the same test used by the trial court in ruling on the motion.
 
 Id.
 

 The issue in this case is whether Chemplex presented sufficient evidence at trial to allow the jury to find that Chem-plex’s spooling machine was a trade secret. A “trade secret” is “information, including a formula, pattern, compilation, program, device, method, technique, or process that”:
 

 (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
 

 (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
 

 § 688.002(4), Fla. Stat. (2007). When a secret process is at issue, the plaintiff is responsible for showing:
 

 (a) the process is a secret, (b) the extent to which the information is known outside of the owner’s business, (c) the extent to which it is known by employees and others involved in the owner’s business, (d) the extent of measures taken by the owner to guard the secrecy of the information, (e) the value of the information to the owner and to his competitors, (f) the amount of effort or money expended by the owner in developing the information, and (g) the ease or difficulty with which the information could be properly acquired or duplicated by others.
 

 Lee v. Cercoa, Inc.,
 
 433 So.2d 1, 2 (Fla. 4th DCA 1983).
 

 The record reflects that Chemplex presented sufficient evidence regarding these elements. Through Solazzi’s testimony, Chemplex established that the spooling machine was unique and not readily ascertainable by proper means. Solazzi testified that he and his father invented The machine and explained that, while other
 
 *206
 
 companies do have spooling machines, the design of his machine is very specific and involves intricate calculations, as well as a timing chain with a counter. He further testified about the difficulty he faced in figuring out the precise measurements and ratios to obtain the desired result. He explained that without access to the machine one would be unable to obtain the required measurements. Based on his testimony concerning the unique and specialized nature of the machine’s design, the jury could have found that the design of Chemplex’s machine derived an economic benefit from not being generally known to or readily ascertainable by others. See
 
 Sun Crete of Fla., Inc. v. Sundeck Prods., Inc.,
 
 452 So.2d 973 (Fla. 4th DCA 1984) (finding that plaintiffs adequately demonstrated that their complicated process for covering concrete surfaces amounted to a trade secret notwithstanding the availability of some of the raw materials to others in the field).
 

 Additionally, Chemplex presented evidence of the reasonable measures it took to maintain the secrecy of its machine. Solazzi testified that the spooling machine was kept in a separate room away from the public. Only those persons who operated the machine were authorized to enter the “film room.”
 

 Premier points out that Chem-plex never had any sort of confidentiality agreement with its employees or any patent for the spooling machine. However, the lack of a confidentiality
 
 agreement
 
 does not necessarily defeat Chemplex’s argument that the machine is a trade secret.
 

 Where an employee acquires, during the course of his employment, a special technique or process developed by his employer, the employee is under a duty, even in the absence of an express contractual provision, not to disclose such skills, techniques or processes ... for his own or another’s benefit to the detriment of his previous employer.
 

 Lee,
 
 433 So.2d at 2. Furthermore, the Supreme Court has explained that “the patenting of a product negates the possibility that the product is also a trade secret.”
 
 Tedder Boat Ramp Sys., Inc. v. Hillsborough County, Fla.,
 
 54 F.Supp.2d 1300, 1303 (M.D.Fla.1999) (citing
 
 Christianson v. Colt Indus. Operating Corp.,
 
 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).
 

 In sum, Chemplex adduced sufficient evidence to support the jury’s finding in a special interrogatory verdict that the spooling machine and its design were trade secrets. Taking every fact and reasonable inference in favor of Chemplex, the ti’ial court properly denied the motions for directed verdict and judgment notwithstanding the verdict.
 

 Premier argues that, even if we find no error in the trial court’s denial of a directed verdict on liability, we must still reverse the order granting a permanent injunction because it fails to specify the reasons for entry of the injunction, as required by Rule 1.610(c), Florida Rules of Civil Procedure. Chemplex counters that the order was sufficient in that the permanent injunction was expressly based on the jury verdict. However, Premier asserts, and the record reflects, that the trial judge mistakenly concluded that he was bound by the jury’s verdict, as well as a court order entered by his predecessor, in entering the injunction.
 

 Rule 1.610(c) Form and Scope states: “Every injunction shall specify the reasons for entry, shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document ...” Failure to include specific reasons for issuing the injunction has resulted in reversals of temporary injunctions.
 
 See, e.g., Green v. Studen,
 
 622 So.2d 197 (Fla. 4th
 
 *207
 
 DCA 1993);
 
 Smith v. Crider,
 
 932 So.2d 393, 398 (Fla. 2d DCA 2006);
 
 Indus. Waste Servs., Inc. v. Faircloth Sanitation, Inc.,
 
 643 So.2d 688 (Fla. 3d DCA 1994). Based on the clear wording of the rule, the specificity requirement applies to both temporary and permanent injunctions.
 
 See Hasley v. Harrell,
 
 971 So.2d 149, 152 (Fla. 2d DCA 2007) (reclassifying a temporary injunction as a permanent injunction and reversing it because its form was deficient under the governing rule and statute).
 

 We affirm denial of the motions for direct verdict and judgment notwithstanding the verdict, but reverse the permanent injunction order and remand this cause to the trial court to reconsider the injunctive relief sought and, if the court decides to grant a permanent injunction, to enter an order specifying the reasons for entry, pursuant to Rule 1.610(c) of the Florida Rules of Civil Procedure.
 

 Affirm,ed in part; Reversed in part and Remanded.
 

 HAZOURI, J., and BLANC, PETER D., Associate Judge, concur.
 

 [1]
 

 . Premier also asserts that Chemplex failed to show that Premier's equipment was a “virtual copy" of Chemplex's equipment. However, we agree with Chemplex that Premier waived this identical machine argument by failing to raise it as a ground for directed verdict prior to the jury verdict.
 
 See Smith v. Hooligan’s Pub & Oyster Bar, Ltd.,
 
 753 So.2d 596, 598 (Fla. 3d DCA 2000);
 
 Allstate Ins. Co. v. Gonzalez,
 
 619 So.2d 318, 320 (Fla. 3d DCA 1993);
 
 Grossman v. Fla. Power & Light Co.,
 
 570 So.2d 992, 993 (Fla. 2d DCA 1990).