PER CURIAM.
In this action for misappropriation of a trade secret, the issue presented is whether the trial court abused its discretion by failing to give the requested jury instruction on the time period applicable to measuring the actual loss component of appel-lee’s damages. Appellant requested that the jury be permitted to award actual loss damages only for the time period that the trade secret was entitled to protection as a trade secret, known as a “head-start period.” Appellant also appeals the trial court’s responses to questions posed by the jury during its deliberations. We find that the trial court did not err regarding the time period applicable to the measurement of appellee’s damages. We affirm on both issues.[1]
On appellee’s claims against appellant, the court held separate trials on liability and damages. Following the liability trial, a jury found that appellee’s “spooling machine and its design were trade secrets” that appellant had misappropriated in 1999. Premier Lab Supply, Inc. v. Chemplex Indus., Inc., 10 So.3d 202, 206 (Fla. 4th DCA 2009). This court determined that there was “sufficient evidence to support the jury’s finding.” Id. Following remand, the parties entered into a stipulation in lieu of injunction, whereby appel *643 lant agreed to cease using its misappropriated spooling machine as of August 8, 2007. On that date, appellant replaced its spooling machine with a “label machine” that has been publicly available since 2003.
Before the damages trial began, the trial court determined that appellant would be permitted to introduce evidence tending to prove that machines comparable to appel-lee’s spooling machine, and the components that made up the machine, were available in the marketplace. The trial court, however, determined that this evidence would apply only toward limiting the damages that appellee could recover for the amount that appellant was unjustly enriched. It would not apply toward limiting the actual losses sustained by appellee. The trial court reasoned that such evidence would allow appellant to misappropriate a trade secret, and then argue that appellee suffered no actual losses because appellant “could have gotten something equally advantageous ... the same day.”
Appellant sold “some of its thin film products” to buyers whom it “knew to be former or customers of’ appellee. Under one theory of appellee’s damages, appel-lee’s expert calculated appellee’s lost profits due to loss of thin film sales between 1999 and 2007. The expert found that appellee lost $262,913 in profits on sales of thin film products as a result of appellant’s sales to “common customers.” The expert’s other two theories pertained to profits made by appellant.[2]
Appellant then presented testimony describing appellee’s spooling machine as “medium technology,” and explaining that one of its technological components was at least forty years old. Appellant’s expert testified that all of the machine’s design features could be purchased in the marketplace in 1999.
The trial court instructed the jury that a previous jury had determined that appellant misappropriated appellee’s spooling machine and its design, and utilized it to directly compete with appellee. As to damages, the jury was instructed that “Plaintiff must prove that Defendant used or disclosed Plaintiffs design of the res-pooling machine in a way that injured or damaged Plaintiff causing an actual monetary loss.” The jury was also instructed that it may award damages if it determined that appellant was unjustly enriched, provided that the amounts awarded for unjust enrichment were not taken into account in computing appellee’s actual losses.
“Actual loss” was defined as “loss of profits, lost customers or lost market share to the owner of the trade secret caused by the misappropriation.” A jury instruction defined “[ujnjust enrichment” as “the recovery of the full total of Defendant’s profits or apportioned amount designed to correspond to the actual contribution the Plaintiffs trade secret made to Defendant’s commercial success caused by the misappropriation.”
Another instruction was titled “Accounting Period.” The “accounting period” applied only to unjust enrichment damages, not actual losses. The court instructed the jury that, with respect to calculating the amount of unjust enrichment, the jury should award damages only for the period of time the trade secret remained a trade secret. In determining this period, the jury was permitted to consider the available technology and resources available to *644 appellant in the period immediately following the misappropriation. Appellant had unsuccessfully requested that this instruction also apply to the jury’s calculation of the actual loss period.
During its deliberations, the jury sent a note back to the trial court containing a compound question. The jury asked, “Are we allowed to consider whether or not we believe it is a ‘trade secret’ or are we allowed to consider this morning’s witness’ testimony that the technology is and was commonly available.” Appellant requested the court to respond that the jury was free to find that the spooling machine ceased to be a trade secret at a point after the time of the 1999 misappropriation. The court denied this request, and answered “no” to the first part of this question. As to the second part, the court responded “yes” and referred the jury to the instructions on “unjust enrichment” and “accounting period.”
The jury found that appellee had suffered an actual loss caused by appellant’s misappropriation of its trade secret in the amount of $196,500. This actual loss was found to have accrued from 1999 through 2007. The jury further found that appellant had been unjustly enriched by $100,000 and that the unjust enrichment began to accrue in 1999, but ceased to accrue in 2003. This appeal ensues.
“A trial court is accorded broad discretion in formulating appropriate jury instructions and its decision should not be reversed unless the error complained of resulted in a miscarriage of justice or the instruction was reasonably calculated to confuse or mislead the jury.” Barton Protective Servs., Inc. v. Faber, 745 So.2d 968, 974 (Fla. 4th DCA 1999). A party asserting that it was entitled to a particular jury instruction must demonstrate that “(1) the requested instruction accurately states the law applicable to the facts of the case; (2) the testimony and other evidence presented support the giving of the instruction; and (3) the instruction was necessary to resolve the issues in the case properly.” McConnell v. Union Carbide Corp., 937 So.2d 148, 152-53 (Fla. 4th DCA 2006) (citation omitted) (noting also that it is “more accurate” to review “giving or refusing jury- instructions .... under a mixed standard of de novo and abuse of discretion”).
In an action for misappropriation of a trade secret, “[djamages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.” § 688.004(1), Fla. Stat. (2007). In such actions, “when some damage is proven and ‘the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.’ ” Perdue Farms Inc. v. Hook, 777 So.2d 1047, 1051 (Fla. 2d DCA 2001) (citation omitted). A plaintiffs burden of proof as to damages caused by the misappropriation is “liberal” and is satisfied “by showing the misappropriation, the subsequent commercial use, and ... evidence by which the jury can value the rights the defendant has obtained.” Id. at 1052 (citation omitted).
In the present case, appellant contends that the trial court erred by refusing to provide the jury with guidance as to the time period applicable to measuring appellee’s actual losses. According to appellant, the applicable period was the period that information concerning how to construct appellee’s spooling machine remained unavailable to appellant, absent appellant’s misappropriation. This period, sometimes called a “head-start period,” can be defined as “the amount of time it would have taken [appellant] to independently develop its product without the *645 benefit of [appellee’s] trade secrets.” Sensormatic Elec. Corp. v. TAG Co. US, 632 F.Supp.2d 1147, 1187 (S.D.Fla.2008).[3] We find that the trial court did not err in denying the requested instruction in that “actual loss caused by misappropriation” under Florida’s Uniform Trade Secrets Act does not require the temporal limitation requested.[4]
We first note that section 688.003(1), Florida Statutes, which allows for a plaintiff in a misappropriation of trade secrets case to obtain injunctive relief, provides that, in general, “an injunction shall be terminated when the trade secret has ceased to exist.” Section 688.004, Florida Statutes, does not require that this period be applied to limit a trade secret plaintiffs actual losses. Instead, section 688.004 requires causation between the actual losses and the misappropriation.
In finding this distinction significant, we are persuaded by the case of RRK Holding Co. v. Sears, Roebuck & Co., 563 F.Supp.2d 832, 836 (N.D.Ill.2008). In RRK Holding, the defendant argued that the plaintiff “failed to limit its damages claims to the time necessary to reverse engineer its trade secret product, i.e., the ‘head start’ period.” Id. The jury instruction at issue read, as here, “damages can include Plaintiffs actual loss caused by Defendant’s misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing Plaintiffs actual loss.” Id. The court stated that “[w]hile Illinois case law requires damages be limited to a head start period for injunctive relief, it has not made such a requirement for monetary damages. The law does not support Defendant’s contention.” Id. (citations omitted).[5]
Rather, “[c]ourts have recognized that a plaintiffs actual damages can be measured by the value of the loss of the secret to the plaintiff under the circumstances.” CardioVention, Inc. v. Medtronic, Inc., 483 F.Supp.2d 830, 846 (D.Minn.2007). In the present case, the trial court defined “actual loss” as “loss of profits, lost customers or lost market share to the owner of the trade secret caused by the misappropriation.” We do not find any abuse of discretion in this definition. For example, “lost profits based on a market share is an acceptable approach of demonstrating the causal relationship between misappropriation and lost profits.” Agilent Techs., 2010 WL 610725, at *28. See also Univ. Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 536 (5th Cir.1974) (lost sales may be a “helpful approach” if a “specific injury to the plaintiff can be established”). In this case, the jury was presented with detailed expert testimony and documentary evidence to assist it in determining which of appellee’s actual losses were caused by appellant’s misappropriation of *646 the spooling machine’s design, including estimations of appellee’s lost profits from appellant’s sales to common customers. We conclude that it was within the domain of the finder of fact to determine whether the misappropriation caused actual losses to appellee through August 3, 2007, the date appellant ceased using its spooling machine.
We also find no error in the court’s responses to the jury’s questions during its deliberations. Because a previous jury had determined that the design of the spooling machine was a trade secret of appellee, the trial court did not abuse its discretion when it responded “no” to the jury’s question asking if it could consider whether “it is a ‘trade secret.’ ” As to the jury’s question inquiring if it could consider the testimony that the technology required to build the spooling machine “is and was commonly available,” the trial court directed the jury to the definition of “unjust enrichment” and the “accounting period” instruction. This response was consistent with our interpretation of section 688.004, Florida Statutes.
In summation, a plaintiffs actual losses in a misappropriation of trade secrets case need only be “caused by” the misappropriation. § 688.004, Fla. Stat. Therefore, we find no abuse of discretion in the trial court’s denial of the requested instruction and responses to the jury’s questions.

Affirmed.

CIKLIN, GERBER and LEVINE, JJ., concur.

. We also affirm as to appellant's two other issues on appeal without discussion.

. The expert concluded that appellant made a profit of $189,149 on sales of products that appellee did not make but that appellant made and sold to common customers, and on appellant's sales to non-common customers. When the issue of common customers was eliminated, the expert found that appellant made a profit of $322,886 on sales of thin film products.

. "Although the ‘head start period' is an acceptable way to limit the amount of damages available to a plaintiff in a trade secret misappropriation case, such a limitation is not mandatory.” Agilent Techs., Inc. v. Kirkland, C.A. No. 3512-VCS, 2010 WL 610725, at *27 (Del.Ch. Feb. 18, 2010).

. Neither appellant nor appellee challenges the application of a "head-start period” to limit the unjust enrichment component of ap-pellee’s damages.

. See also Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 385 N.E.2d 1349, 1357 n. 11 (1979) (noting that "applying a 'head start rule’ in assessing damages in this action ... is improper”); Russo v. Ballard Med. Prods., 550 F.3d 1004, 1020 (10th Cir.2008) (finding, even "assuming Utah embraces the [head-start] rule,” "no reversible error in the district court’s jury instructions” where, as it pertained to unjust enrichment, defendant was free to argue that the benefit to it was limited "by the time period in which the misappropriation afforded the company a head start to market”).