# Third District Court of Appeal

## State of Florida

Opinion filed December 16, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1651
Lower Tribunal No. 13-19500
_____

## Digiport, Inc. and Data Centers Worldwide, Inc.,
Appellants,

vs.

## Foram Development BFC, LLC, et al.,
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Eaton & Wolk, PL, and Douglas F. Eaton, for appellants.

Wolfe Law Miami, P.A., and Richard C. Wolfe, for appellees.

Before MILLER, GORDO and LOBREE, JJ.

PER CURIAM.

Digiport, Inc. and Data Centers Worldwide, Inc. (collectively, "Digiport")

appeal from a final summary judgment in favor of Foram Development BFC, LLC and its nine affiliated entities[1] (collectively, "Foram Group"), in this lawsuit for misappropriation of a trade secret under the Florida Uniform Trade Secret Act ("FUTSA"), misappropriation of an idea, and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  Although Digiport's common law claim is preempted by FUTSA,[2] whether Digiport's business concept constitutes a trade secret is a question of fact.  See Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc., 45 Fla. L. Weekly D2275, D2275 (Fla. 3d DCA Oct. 7, 2020).  Thus, we affirm in part and reverse in part.

Facts and Procedural History

Digiport's operative complaint identifies the nature of the alleged trade secret/novel idea at issue as its proposed design of a single, centralized data or collocation center for computer hardware located inside Brickell Financial Centre (the "building"), in which the building's tenants could rent space for their computer hardware, or use cloud computing and management services provided by Digiport.  Pursuant to the complaint, "Digiport designs its data centers from the ground up to

---

[1] Brickell Financial Centre, LLC, Brickell Holdings, LLC, Elm Spring Inc., Englian Development LLC, Foram Management and Leasing, LLC, Marof Enterprises, Inc., Foram Development Bartram, LLC, Foram Development Group, LLC, and Foram Group, Inc. of Georgia.

[2] See § 688.008(2), Fla. Stat. (2010).

include state of the art servers, data backup systems, cooling, power, and fiber optic infrastructures integrated into the property envelope to provide maximum performance for tenants and efficiency for landlords." Digiport further contemplated offering other services, such as wiring the building for data and telecom and providing 24/7 on-site technical support.

Digiport first presented this proposal to Foram Group's agents, allegedly in confidence, in 2008, when the building was under construction. After Digiport acquired the technical information required to provide a specifically tailored proposal, it met with Foram Group's engineers to discuss the incorporation of the data center. The parties then explored the overall structure and design of the data center. Ultimately, Foram Group's agents hired another company to design and install a data center in the building. The building is now connected to Terremark's Network Access Point of the Americas, and its tenants are being offered many of the services Digiport had offered to provide. After its completion, the data center was marketed to potential tenants as a new approach to office space. Digiport sought to recover lost profits suffered as a result of the missed opportunity to earn what it estimated was up to $18,000 revenue annually per tenant that may have contracted to use its data center, but for the alleged misappropriation.

Foram Group moved for summary judgment on all counts. Foram Group first argued Digiport's proposal for the building was not a trade secret under FUTSA

because it was based on overall, general design features of a colocation center, which were well-known in the data center provider industry prior to 2008. Foram Group further contended that the concept at issue lacked the "genuine novelty" element required to prevail on a claim for misappropriation of an idea, or alternatively, this common law claim was displaced by FUTSA's preemption provision. Finally, Foram Group asserted that Digiport could not prevail on its FDUTPA claim as a matter of law, as it was seeking lost profits, which could not satisfy one of the necessary of prongs under FDUTPA–that is, actual damages.[3]

In support, Foram Group relied on the following evidence as conclusively establishing that the concept at issue was generally known in the information technology ("IT") industry prior to 2008, and thus not unique to Digiport: a copy of the U.S. Patent and Trademark Office denial of Digiport's patent application pertaining to the concept at issue; an affidavit of Chris Senneff, the manager of the current data center at the building, attesting that a tenant-specific central colocation center was not, as of 2008, novel or unique, but rather, was being promoted by numerous other IT companies; and a declaration of Yunexy Eloy ("Eloy"), an architect who designed the current data center in the building, who likewise declared

---

[3] Foram Group did not move for summary judgment on the basis that Digiport failed to make efforts that are reasonable under the circumstances to maintain the secrecy of the concept at issue or that its disclosure was not made in confidence.

that the ideas, concepts, and designs he used to build the data center were commonly known in the technology industry at that time.

In opposition to summary judgment, Digiport relied upon: a declaration of its owner Marc Billings ("Billings"), who essentially attested he was not aware of any other data center concept like this in any other building throughout the country; and several internal emails between Foram Group's agents, in which they discussed marketing the current data center to potential tenants as a new and unique approach to office space. Following a hearing, the trial court entered summary judgment for Foram Group on all three counts. This appeal ensued.

Analysis

Summary judgment is appropriate "if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). It is a proper stage "to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings." Fla. Bar v. Greene, 926 So. 2d 1195, 2000 (Fla. 2006).

Florida's trade secret law is governed by FUTSA, which creates a statutory cause of action for trade secret misappropriation. § 688.008(1), Fla. Stat. (2010). It defines the term "trade secret" as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:

5

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 688.002(4), Fla. Stat. (2010).

Ordinarily, "whether a particular type of information constitutes a trade secret is a question of fact." Poet Theatricals Marine, LLC, 2020 WL 5931884, at *2 (quoting Treco Int'l S.A. v. Kromka, 706 F. Supp. 2d 1283, 1285 (S.D. Fla. 2010)); see also Sea Coast Fire, Inc. v. Triangle Fire, Inc., 170 So. 3d 804, 806 (Fla. 3d DCA 2014); Cooper Tire & Rubber Co. v. Cabrera, 112 So. 3d 731, 732 (Fla. 3d DCA 2013); Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) ("The question of whether an item . . . constitutes a 'trade secret' is of the type normally resolved by a fact finder after full presentation of evidence from each side."). This is because "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectable secret." In re TXCO Res., Inc., 475 B.R. 781, 804 (Bankr. W.D. Tex. 2012) (quoting Metallurgical Indus. Inc. v. Fourtek, Inc., 790 F.2d 1195, 1202 (5th Cir. 1986)). Accordingly, "[e]ven if all of the

6

information is publicly available, a unique compilation of that information, which adds value to the information, also may qualify as a trade secret." Capital Asset Rsch. Corp. v. Finnegan, 160 F.3d 683, 686 (11th Cir. 1998); see Premier Lab Supply, Inc. v. Chemplex Indus., Inc., 10 So. 3d 202, 206 (Fla. 4th DCA 2009).

Here, although Eloy and Senneff contended through their submission that the centralized data system was not, in and of itself, novel, Billings' declaration and the internal emails between Foram Group's agents created a genuine issue as to whether the proposed project contained "elements which by themselves may be readily ascertainable in the public domain, but when viewed together may still qualify for trade secret protection." See Amoco Prod. Co. v. Laird, 622 N.E.2d 912, 919 (Ind. 1993). Accordingly, the summary judgment evidence, considered in the light most favorable to Digiport, the nonmoving party, raises a factual issue as to the FUTSA claim. See also CareerFairs.com v. United Bus. Media LLC, 838 F. Supp. 2d 1316, 1320 (S.D. Fla. 2011); Bladeroom Grp. Ltd. v. Facebook, Inc., No. 5:15-cv-01370-EJD, 2018 WL 452111, at *2-3 (N.D. Cal. Jan. 17, 2018).[4]

We turn our analysis to the remaining claims. In determining if a tort cause of action is preempted by the FUTSA, courts have examined whether there are "material distinctions between the allegations comprising the additional torts and the

---

[4] Contrary to Foram Group's contention, novelty in the patent law sense is not required for a trade secret. See Premier Lab Supply, Inc., 10 So. 3d at 206.

allegations supporting the FUTSA claim." New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007) ("[A]s a general proposition[,] other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA."). Here, both the trade secret misappropriation claim and the misappropriation of a business idea count are premised upon allegations that Digiport invested substantial time in creating a novel business idea, the idea was disclosed to Foram Group in confidence, reasonable measures to protect the secrecy were undertaken, and Foram Group misappropriated the idea by disclosing its plans to other companies for its own benefit. Thus, there are no material variations between the counts. Under these circumstances, the trial court properly granted summary judgment on the common law claim. Compare Developmental Techs., LLC v. Valmont Indus., Inc., No. 8:14-CV-2796-MSS-JSS, 2016 WL 7320908, at *6 (M.D. Fla. July 18, 2016) (dismissing plaintiff's claims for misappropriation of ideas as preempted by FUTSA where claims not materially distinct), with Fenton, 510 F. Supp. 2d at 893, 908 (denying motion to dismiss plaintiff's fraudulent inducement claim as there were "material differences between the fraudulent inducement claim and the FUTSA claim").

Lastly, we conclude that the summary judgment evidence in the record also raises a factual issue as to the FDUTPA violation based on alleged misappropriation. As to Foram Group's contention that Digiport is constrained to seek actual damages

8

under FDUTPA, we agree that consequential damages are barred under the statute. See Dorestin v. Hollywood Imps., Inc., 45 So. 3d 819, 824-25 (Fla. 4th DCA 2010) ("[FDUTPA] does not allow the recovery of other damages, such as consequential damages."); Rodriguez v. Recovery Performance & Marine, LLC, 38 So. 3d 178, 181 (Fla. 3d DCA 2010) (same); Orkin Exterminating Co., Inc. v. Petsch, 872 So. 2d 259, 263 (Fla. 2d DCA 2004) (noting FDUTPA "permits a consumer to recover only the diminished value of the services received," and not "special, consequential, and incidental damages"); Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc., No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (finding that actual damages do not include "consequential damages").  Thus, to the extent the trial court precluded an award of future lost profits, we discern no error. Compare Eclipse Med., Inc. v Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) (medical equipment distributors' claims for lost future profits in action against supplier did not constitute "actual damages," and thus were not recoverable under FDUTPA), with Factory Direct Tires Inc. v. Cooper Tire & Rubber Co., Case No.: 3:11-cv-255-RV/EMT, 2011 WL 13117118, at *7 (N.D. Fla. Oct. 24, 2011) (noting that company was not seeking future lost profits, but rather

lost profits it already suffered, which could constitute "actual damages" under FDUTPA in some cases).[5]

Affirmed in part; reversed in part; and remanded for further proceedings.

---

[5] As the determination that a genuine issue of material fact remains is "a sufficient ground for deciding this case," we decline to reach the remaining issues raised given "the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more." PDK Labs., Inc. v. U.S. Drug Enf't Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring); see State ex rel. Singh v. Kemper, 883 N.W.2d 86, 124 (Wis. 2016) (Ziegler, J., concurring in part, dissenting in part) ("Judicial restraint requires that we resolve cases on the narrowest possible grounds.").