# Third District Court of Appeal

## State of Florida

Opinion filed January 26, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1630
Lower Tribunal No. 14-8718
_____

**Richard Forbes,**
Appellant,

vs.

**Millionaire Gallery, Inc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Fowler White Burnett, P.A., and June Galkoski Hoffman (Fort Lauderdale), for appellant.

Isicoff Ragatz and Eric D. Isicoff and Teresa Ragatz and Christopher M. Yannuzzi, for appellee Millionaire Gallery, Inc.

Before LOGUE, MILLER and LOBREE, JJ.

LOBREE, J.

Richard Forbes seeks review of a final judgment entered on a jury

verdict in favor of his former employer, Millionaire Gallery, Inc. ("Millionaire Gallery"), on claims for misappropriation of a trade secret under the Florida Uniform Trade Secrets Act, sections 688.001–.009, Florida Statutes (2017), unfair competition under Florida common law, and breach of fiduciary duty. Over Forbes' claim that he was entitled to a directed verdict or a judgment notwithstanding the verdict, we affirm.

Millionaire Gallery produces, markets, and sells entertainment and sports memorabilia. Forbes was Millionaire Gallery's accountant and the Chief Financial Officer. In October 2011, Forbes resigned from his position, stating that he wanted to start a new career. Nonetheless, for a period of time after his resignation, Forbes continued to provide accounting services to Millionaire Gallery. It is undisputed that on March 9, 2012, while he was still assisting Millionaire Gallery, Forbes formed Investment Ink, LLC, which also sells sports and entertainment memorabilia and does business under the name Signature Royale. At trial, there was testimony that Signature Royale populated its website and Facebook page with images of Millionaire Gallery's products. Indeed, Forbes acknowledged that when he left Millionaire Gallery he took about 300 photographic images of memorabilia products with him and that he used the images on the Signature Royale

2

website as "placeholders."[1]   Signature Royale also sent email blasts to individuals on Millionaire Gallery's customer contact list.  Based on financial information provided by Forbes, Millionaire Gallery's expert CPA testified that for its first partial year of business, 82% of Signature Royale's sales were made to Millionaire Gallery customers.  In 2013, 71% of Signature Royale's sales were to Millionaire Gallery customers, followed by three more years of close to 50% of sales made to customers of Millionaire Gallery.  The expert also testified from 2012 to 2017, Signature Royale's gross profit on sales to Millionaire Gallery customers was $492,492.

Millionaire Gallery sued Investment Ink, LLC, Forbes, and two other former employees who left Millionaire Gallery to work for Signature Royale. At the end of an eight-day trial, the jury determined that Millionaire Gallery's customer database constituted a trade secret, and that Forbes and the other defendants misappropriated Millionaire Gallery's trade secret.  The jury also found that Forbes and the other defendants engaged in unfair competition. The jury awarded $492,492 in damages on each claim.  The jury further

---

[1] Harrods contacted Millionaire Gallery when it noticed Signature Royale listing images of signed jerseys from Cristiano Ronaldo and Lionel Messi. Harrods had purchased the jerseys from Millionaire Gallery at a higher price than that listed by Signature Royale.  Signature Royale also displayed scanned images of items owned by Millionaire Gallery, such as tickets from the 1980 Olympic Ceremonies that were listed for sale on the Signature Royale's website.  Millionaire Gallery produced the originals at trial.

found that Forbes breached a fiduciary duty owed to Millionaire Gallery and awarded $492,492 in damages. After granting Millionaire Gallery's motion for award of exemplary damages, the trial court entered a final judgment against Forbes and the other defendants in the amount of $1,517,070.46, jointly and severally.

On appeal, Forbes asserts that he was entitled to a directed verdict or a judgment notwithstanding the verdict on all claims. "We review the trial court's denial of a motion for a directed verdict and a motion for judgment notwithstanding the verdict de novo." Miami-Dade County v. Jones, 232 So. 3d 1127, 1129 (Fla. 3d DCA 2017). "When deciding the appropriateness of a directed verdict or JNOV, Florida trial and appellate courts use the test of whether the verdict is, for JNOVs, or would be, for directed verdicts, supported by competent, substantial evidence." Siegel v. Cross Senior Care, Inc., 239 So. 3d 738, 743 (Fla. 3d DCA 2018) (quoting Lindon v. Dalton Hotel Corp., 49 So. 3d 299, 303 (Fla. 5th DCA 2010)). "Moreover, '[a] motion for directed verdict or JNOV should be granted only if no view of the evidence could support a verdict for the nonmoving party and the trial court therefore determines that no reasonable jury could render a verdict for that party.'" Id.; see Hernandez v. Mishali, 319 So. 3d 753, 757 (Fla. 3d DCA 2021) (stating that in reviewing order on motion for verdict and for judgment

4

notwithstanding verdict, "we must determine 'whether any reasonable jury could have rendered the verdict.'" (quoting Fridman v. Safeco Ins. Co. of Ill., 185 So. 3d 1214, 1227 (Fla. 2016))). "[A]n appellate court must affirm the denial of a motion for directed verdict if any reasonable view of the evidence could sustain a verdict in favor of the non-moving party." Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So. 3d 247, 250 (Fla. 4th DCA 2009).

Viewing the evidence in the light most favorable to the nonmoving party, Millionaire Gallery, as we must, Hernandez, 319 So. 3d at 758, we conclude that competent, substantial evidence supports the jury's verdict on each claim. In short, Forbes has not shown that there is insufficient evidence upon which the jury could have relied when it found he misappropriated Millionaire Gallery's trade secret, engaged in unfair competition, and breached his fiduciary duty to Millionaire Gallery. Nor has Forbes shown that there was no evidence to award damages on Millionaire Gallery's claims. See § 688.004(1) ("Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."); Premier Lab Supply, Inc. v. Chemplex Indus., Inc., 94 So. 3d 640, 644 (Fla. 4th DCA 2012) (stating that in action for misappropriation of trade secrets, "[a] plaintiff's burden of proof as to damages caused by the misappropriation is 'liberal' and is

5

satisfied 'by showing the misappropriation, the subsequent commercial use, and . . . evidence by which the jury can value the rights the defendant has obtained'" (quoting Perdue Farms Inc. v. Hook, 777 So. 2d 1047, 1052 (Fla. 2d DCA 2001))); Ameritox, Ltd. v. Millennium Lab'ys, Inc., No. 8:11-cv-775-T-24-TBM, 2014 WL 1456347, at *12 (M.D. Fla. Apr. 14, 2014) (concluding that disgorgement of profits is available remedy for unfair competition claim under Florida law); King Mountain Condo. Ass'n v. Gundlach, 425 So. 2d 569, 571–72 (Fla. 4th DCA 1982) (explaining that disgorgement of profits is remedy for breach of fiduciary duty).

Affirmed.