[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-12066

————————————————

CAPITAL CITY HOME LOANS LLC,

Plaintiff-Appellee,

*versus*

MARY DARNELL,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cv-00228-AW-MJF

————————————————

Before WILSON, ROSENBAUM, and ABUDU, Circuit Judges.

PER CURIAM:

This case arises from acts occurring during Defendant-Appellant Mary Darnell's employment with Plaintiff-Appellee Capital City Home Loans (Capital City). When Darnell resigned from her job with Capital City, she took sensitive customer information, including information linked with the customers' accounts and driver's license data. Darnell then used this information to generate business for her new employer, Drummond Bank. Upon learning of Darnell's actions, Capital City filed a complaint alleging violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (DTSA), and the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.* (FUTSA). Darnell never responded to the complaint, and a clerk's default and default judgment were entered against her. Darnell now contests the entry of default and default judgment due to alleged improper service of process and challenges the investigatory and remedial damages award for Capital City. After careful review, and with the benefit of oral argument, we affirm.

## I.    Background

Darnell worked as a Mortgage Consultant Assistant for Capital City. Capital City provides the service of soliciting and/or administering residential mortgages. As a Mortgage Consultant Assistant, Darnell assisted in soliciting customers for home mortgages. To perform her job duties, Darnell had access to sensitive, confidential customer data and Capital City's trade secrets. Darnell agreed that she would handle this information within the

guidelines set out in the Employee Handbook. This entailed accessing and using the information only for appropriate business purposes and protecting the confidentiality and security of customer information according to Capital City's Privacy Policy and Information Security Policy. Darnell also agreed that her obligations to protect this data would continue should her employment with Capital City come to an end. On May 16, 2021, Darnell emailed her abrupt resignation to Capital City. She stated that she and Todd Corley, the Mortgage Officer Darnell supported, were terminating their employment with Capital City—effective immediately.

Before her resignation, Darnell sent hundreds of pages of internal Capital City documents to her and Corley's personal email addresses. Relevant documents sent included: (1) Capital City's internal forms and processes; (2) contracts between Capital City and outside parties; and (3) customer application information, which involved customer federal income tax returns, W-2 forms, bank account statements, driver's licenses, and other personal and confidential information. Capital City did not authorize Darnell to send herself this sensitive information. Darnell ultimately used the information retrieved during her time with Capital City to solicit customers at Drummond Bank, another lender.

On May 20, 2021, Capital City sent Darnell and Corley letters via email and federal express demanding they cease using the information and return it to Capital City. Neither Darnell nor Corley responded to these letters.

Capital City sued Darnell on June 2, 2021, alleging that Darnell stole customer files and information in violation of the DTSA and FUTSA. Capital City submitted to the court an Affidavit of Service stating Darnell had been served by providing the complaint and summons to an unidentified man (listed on the affidavit as "John Doe") at Darnell's home. Darnell failed to respond, and Capital City obtained a clerk's default on August 5, 2021. Accordingly, Capital City moved for a default judgment, which was originally granted in part and denied in part. The district court found Capital City successfully alleged theft of trade secrets in its complaint and ordered a hearing to address the remedy amount.[1]

On March 3, 2022, the district court held an evidentiary hearing to establish Capital City's damages. At the hearing, Capital City

---

[1] On appeal, Darnell argues that the district court erred in determining that the files she took were trade secrets as defined by statute. But Capital City's complaint, deemed admitted by Darnell's default, alleges that the information she took constitutes trade secrets. And Darnell's only support for her argument is a quotation from the district court's discussion of the trade secret question with Capital City's counsel and the assertion that the misappropriated information was not trade secrets but customers' personal information that was compiled by them and might have been shared with other companies. Darnell does not identify any authority for the claim that customer information or information shared with other entities is categorically excluded from trade secret protection. And "[w]e have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Therefore, to the extent Darnell's trade secret argument is not precluded by her default, we deem it waived on appeal.

introduced evidence of the client data Darnell stole. Capital City's senior vice president, Tara Stephens, also testified about conversations she had with clients Darnell contacted after she left. Darnell attempted to persuade these clients to abandon their Capital City loan applications and apply with her new employer. Stephens' efforts prevented her from doing other work-related tasks, and she spent significant time addressing problems Darnell caused. Stephens estimated she spent some 120 hours addressing customer concerns over loan delays, stolen data, and other issues flowing from Darnell's actions.

On April 22, 2022, Darnell filed a motion to vacate the entry of default, claiming she was never served with the lawsuit.

On July 15, 2022, the district court entered an order as to damages, stating Capital City had failed to prove economic loss from the theft as Stephens was compensated based on sales commissions, not time-based wages or salary. Therefore, it found that Capital City had not proven any damages amount. As such, it could not succeed on the trade secret claim. The district court thereby vacated the earlier order of default judgment which granted summary judgment in part.

An evidentiary hearing related to Darnell's motion to vacate default was held on August 11, 2022. Darnell testified regarding whether she received process, and she stated that she had not been served with notice of the suit. Darnell also claimed her son, who stayed with her occasionally, did not receive service of process on her behalf. Capital City's counsel argued that, besides receiving

process through her personal email, Darnell's son was the John Doe listed on the summons document, thereby meaning Darnell received proper service of process.

The court ruled from the bench that it found valid service was executed. To support its finding, the court reasoned that it did not "find Ms. Darnell's testimony to be credible on the whole" due to multiple inconsistencies within her in-court testimony and comparing her testimony to an earlier-submitted affidavit. The district court also found Darnell's son's affidavit stating he did not live at his mother's address not credible because (1) his driver's license listed that address, (2) his voter's registration card listed that address, and (3) his clothes were at that address. The district court further noted that Darnell's son did not appear in court to testify regarding service of process.

On August 17, 2022, the district court entered a formal order denying Darnell's vacatur motion based on finding Darnell had properly been served with the lawsuit. The order further detailed that Darnell willfully defaulted by ignoring the relevant case filings after proper service of process and made false statements in her affidavit and during the August 11 hearing.

In the wake of the August 17 order, the parties stipulated to certain facts submitted to the court. Capital City advanced a new theory of actual loss: that its losses were the $5,636.25 it had paid a law firm to investigate and remediate Darnell's theft before suing her. Based on those stipulations, the district court issued an order on May 11, 2023, finding (1) Capital City established the DTSA and

FUTSA claims; (2) Capital City had shown $5,636.25 in actual loss; (3) Darnell's misappropriation of trade secrets was malicious; (4) because of the malicious misappropriation, the district court awarded $2,750 in exemplary damages (arriving at $8,386.25 total damages); and (5) all that was left to decide was reasonable attorney's fees. Darnell timely appealed.[2]

## II.    Service of Process

A district court's denial of a request to set aside default and the accompanying decisions within are reviewed for abuse of discretion. *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) (internal quotations omitted). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) (quotations omitted). It is difficult to overturn a finding on clear error review; after considering all the evidence presented, we "must be left with the definite and firm

---

[2] The parties did not come to an agreement on attorney's fees prior to Darnell's appeal. The district court has stayed the decision regarding attorney's fees issue pending appeal.

conviction that a mistake has been committed." *Bryant v. Rich*, 530 F.3d 1368, 1377 (11th Cir. 2008) (quotations omitted).

A party may receive relief from a judgment or order if the judgment is void. Fed. R. Civ. P. 60(b)(4). A judgment is considered void against a defendant if the court lacks personal jurisdiction over the parties. *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001). Defaults are generally disfavored because they go against the "strong preference for deciding cases on the merits." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014). But a default is appropriate notwithstanding that strong preference when "a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings." *Compania Interamericana*, 88 F.3d at 951–52.

In reviewing a default, three elements are key: (1) "whether the default was culpable or willful," (2) "whether the defaulting party presents a meritorious defense," and (3) "whether setting [the default] aside would prejudice the adversary." *Id.* at 951. "[T]hese factors are not 'talismanic.'" *Id.* For example, "courts have examined other factors including . . . whether the defaulting party acted promptly to correct the default." *Id.* "[I]f a party willfully defaults . . . the court need make no other findings in denying relief." *Id.* at 951–52. Finally, an issue not addressed on appeal is considered waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004).

Darnell argues that she was not validly served, and therefore the default judgment against her is void. She maintains that the

district court "afforded no weight" to her or her son's affidavits regarding service of process. In Darnell's view, the only people who might have been home during the time to accept service would have been her or her son, and they both affirm they did not receive service of process.

Darnell's argument misrepresents the proceedings below. As Capital City argues, Darnell is mistaken in claiming the district court did not give weight to her and her son's affidavits. It did, but it found Darnell to not be credible and discounted her son's affidavit when he failed to testify in person. These determinations are within the district court's "range of choice." *In re Rasbury*, 24 F.3d at 168. Based on the district court proceedings, the findings of incredibility are substantiated by contradictory statements and do not constitute clear error. *See Bryant*, 530 F.3d at 1377. Overall, Darnell does not instill the "definite and firm conviction that a mistake" has occurred with the district court making these findings. *Id.* (quotations omitted). As such, the district court's factual findings that Darnell and her son are not credible stand, and a determination that her son was served with process based on that finding is not an abuse of discretion. As such, the default judgment is not considered void against her. Fed. R. Civ. P. 60(b)(4); *see also Burke*, 252 F.3d at 1263.

While defaults are frowned upon, *Perez*, 774 F.3d at 1342, the evidence produced at the August 11 hearing demonstrates "an intentional or reckless disregard for the judicial proceedings," thereby allowing this default to stand. *Compania Interamericana*, 88

F.3d at 951–52.  Darnell had received and responded to substantial communications from opposing counsel, demonstrating at least constructive knowledge of the suit, and she did not take proper steps to address the lawsuit.  As the default factors are not "talismanic," it was proper for the district court to consider this in its default analysis as well.  *Id.* at 951.  And Darnell has not shown good cause to set aside the default; even if she had, this argument is waived due to her failure to argue as much on appeal.  *Access Now, Inc.*, 385 F.3d at 1335.  Accordingly, we affirm on this issue.

### III.    Damages

The DTSA and FUTSA both authorize recovery of "actual loss" flowing from trade secret misappropriation.  *See* 18 U.S.C. § 1836(b)(3)(B)(i)(I) (providing recovery for "damages for actual loss caused by the misappropriation of the trade secret"); Fla. Stat. § 688.004(1) (providing recovery for "damages for misappropriation . . . [which] can include . . . the actual loss caused by misappropriation").  "[A] plaintiff's actual losses in a misappropriation of trade secrets case need only be 'caused by' the misappropriation." *Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 94 So. 3d 640, 646 (Fla. Dist. Ct. App. 2012) (per curiam) (quoting § 688.004(1)); *see also id.* at 645 (noting need for "causation between the actual losses and the misappropriation").

Darnell argues that Capital City did not adequately show actual damages as required by statute.  Darnell cites a district court case to support her theory that Florida's legislative intent was to curb awarding attorney's fees.  *See Alphamed Pharms. Corp. v. Arriva*

*Pharms., Inc.*, 432 F. Supp. 2d 1319, 1337 (S.D. Fla. 2006). Referencing *Alphamed*, Darnell maintains there is a difference between legally cognizable damages and attorney's fees, contending legally cognizable damages must be proven first before attorney's fees can be considered. Arguing that Capital City has only alleged attorney's fees and not appropriate damages first, Darnell urges that Capital City has missed an important first step and should fail on its claim. Because Capital City failed on the underlying claim, she claims Capital City also cannot succeed on the claim for attorney's fees, which the district court has stayed pending this appeal. Further, as raised by Darnell at oral argument, Capital City may not institute double recovery—recovering for the same fee twice under two different guises, that of (1) attorney's fees and (2) separate damages.

Admittedly, our circuit has not delivered precedent squarely on point for this question. Still, Darnell misunderstands the issue. Capital City argues that it is not substituting attorney's fees in place of actual damages. Instead, Capital City contends that its pre-litigation attorney's fees garnered during investigating the extent of the damages caused by Darnell's misappropriation constitute the "actual damage" they are seeking. As such, Capital City is not engaged in impermissible double recovery. This much is demonstrated by the record, where the parties' pre-trial stipulation included a joint stipulation of investigatory and remedial fees that Capital City incurred.[3] Further, the attorney's fees pertaining to

---

[3] The stipulation states in relevant part that Capital City:

the cost of litigating Capital City's suit are subject to separate determinations below, which are stayed pending this appeal. While Darnell cites *Alphamed* to support her argument, the case is not relevant to our determination. *Alphamed* explores whether FUTSA claims can proceed under a theory of nominal damages when nominal damages are not provided for in the statutory text. 432 F. Supp. 2d at 1336–37. Ultimately, the district court there decided the parties could not read nominal damages into the statute when the statute was silent on the matter. *Id.* In that discussion, the district court noted that the plaintiff did not allege any damages *at all*, proving fatal to its claim. *Id.* at 1335–36. *Alphamed* provides little relevance to our case and does not prove persuasive for Darnell.

Based on the DTSA and FUTSA statutory texts and existing precedent, the district court reached a logical result. We do not see Capital City's pre-litigation legal bills as "nominal" damages, and we do not see in either statute an intent to exclude the costs of non-litigation remedial work from "actual loss" just because the work happens to be done by attorneys. *See* 18 U.S.C. § 1836(b)(3)(B)(i)(I); Fla. Stat. § 688.004(1). And Capital City's expenses were proximate enough to Darnell's misappropriation to count as actual losses. *See*

---

incurred $5,636.25 in pre-litigation attorney's fees to investigate [Darnell's] sending of customer information to her personal email address to determine what was taken and to develop a strategy to remediate the problems by reaching out to [Darnell], her new employer, and customers whose information was taken and being used by [Darnell] at her new employer.

*Premier Lab Supply, Inc.*, 94 So. 3d at 646.  After all, Capital City's attorney bills were incurred as part of its natural and immediate response to a data breach with potential legal ramifications under various privacy and financial regulations.  *See* Oral Argument at 21:15, *Capital City Home Loans, LLC v. Darnell*, No. 23-12066 (11th Cir. argued Aug. 15, 2024).  Of course, to the extent these bills are compensated as damages, they cannot be doubly recovered as attorney's fees.

We find the district court did not abuse its discretion in determining the non-litigation legal fees constituted damages under the DTSA and FUTSA, and we therefore affirm.

### IV.    Conclusion

We affirm the district court in all respects.

**AFFIRMED.**